UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JANICE MILLER and<br>LAURA PICARD | CIVIL ACTION |
| VERSUS | NO. |
| UPPER IOWA UNIVERSITY,<br>CYNTHIA BENTLEY, TIFFANY ADAMS,<br>KATHY FRANKEN and WILLIAM DUFFY | SECTION " " |

**NOTICE OF REMOVAL [BASED ON FEDERAL QUESTION
AND SUPPLEMENTAL JURISDICTION AS WELL AS IMPROPER
JOINDER OF THE ONLY LOUISIANA INDIVIDUAL DEFENDANT]**

Defendants, Upper Iowa University, Cynthia Bentley, Tiffany Adams, Kathy Franken and

William Duffy, hereby give notice that they are removing this action from the Ninth Judicial District

Court for the Parish of Rapides, State of Louisiana, to the United States District Court for the

Western District of Louisiana, and in support thereof, state the following:

1.

This action was commenced by Plaintiffs' Petition for Damages (Civil Suit No. 263,660-F)

on or about December 12, 2018, wherein Janice Miller ("Miller") and Laura Picard ("Picard") are

Plaintiffs, and Upper Iowa University ("UIU"), Tiffany Adams ("Adams"), Cynthia Bentley

("Bentley"), William Duffy ("Duffy") and Kathy Franken ("Franken") are Defendants.[1] *See* Exh. 1.

2.

Plaintiffs served UIU by fax on December 14.  They tried to serve the Individual Defendants

by fax to UIU on December 17.[2] *See* Declaration of Aaron Wedo (Exh. 2).

---

[1]     As used herein, the term "Individual Defendants" refers to Tiffany (Adams) Johansen, Cynthia Bentley, Dr. William Duffy and Kathy Franken.

[2]     Plaintiffs sent a summons and the Petition by fax to each of the Individual Defendants via or care of UIU.

3.

Plaintiffs allege that they are Louisiana citizens.  *See* Petition on p. 1.

4.

Plaintiffs allege that they were employed by UIU.  *See* Petition at ¶ 5.

5.

UIU is a non-profit institution of higher learning.  Its main campus, in Fayette, Iowa, is a traditional university.  UIU has 23 other campuses or facilities.  UIU offers course curricula and related degrees in business, education, liberal arts, mathematics and science.  The School offers on campus classes as well as online options.  The Higher Learning Commission ("HLC") has accredited and is currently the School's accreditor.  *See* Wedo Declaration.

6.

A party may remove an action from state to federal court if the action is one over which the federal court possesses subject matter jurisdiction.  28 U.S.C. §1441(a); *Manguno v. Prudential Property & Casualty Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

7.

The 30-day period for removal under 28 U.S.C. § 1446 runs from the date of receipt of formal service, properly made.  *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 119 S.Ct. 1322, 1328-29 (1999).  Since UIU was made aware of the Petition on December 14, and regardless of whether such notification amounts to service, removal is at the very least timely.[3]

---

[3] The consent of improperly joined defendants is not required for removal.  *See, e.g., Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993) (requiring consent of improperly or fraudulently joined parties would be nonsensical, as removal in those cases is based on the contention that no other proper defendant exists).  Out of an abundance of caution and reserving all rights, the Individual Defendants consent to removal.  *See* Declarations of Tiffany (Adams) Johansen (Exh. 3), Cynthia Bentley (Exh. 4), William Duffy (Exh. 5) and Kathy Franken (Exh. 6).

## Federal Question Jurisdiction

8.

Plaintiffs allege that they are victims of age, race and sex discrimination, as well as retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*.  *See* Petition at ¶¶ 3-5.[4]  *See also* Wedo Declaration, attaching the EEOC Charges, and the prayer at 5), where Miller and Picard seek punitive damages.

9.

Plaintiffs can recover punitive damages under federal law for violation of Title VII where an employment decision is made with malice or reckless disregard of an employee's federally protected rights.  42 U.S.C. §1981a(b)(1); *Henry v. CorpCar Servs. Houston, Ltd.*, 625 F. App'x 607, 614 (5th Cir. 2015).

10.

Plaintiffs cannot recover punitive damage under Louisiana law.  *See* La. R.S. 23:301, *et seq*. Therefore, their employment discrimination and retaliation claims arise under federal law.

11.

Title VII authorizes claims to be filed in state or federal court.  *See* 42 U.S.C. § 2000e-5(f)(3); *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823-826 (1990).

12.

Plaintiffs' retaliation and race discrimination claims under 42 U.S.C. §2000e-2(a) and 2000e-3(a), respectively, as well as ADEA claims, are, accordingly, removable as there is federal question jurisdiction under 28 U.S.C. §1331.

---

[4]      Note:  The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, *et seq*., prohibits age discrimination. Title VII does not.

## Supplemental Jurisdiction

13.

28 U.S.C. § 1367 (a) states:

[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

14.

Due to the Court's original federal question jurisdiction over Plaintiffs' federal age as well as race discrimination and retaliation claims, this Court has Supplemental Jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, because the federal and state law claims are based on a common nucleus of operative facts. *Id.*; *Landry v. Delta Well Surveyors*, C.A No. 96-3805, 1997 WL 191511 at *3 (E.D. La. Apr. 16, 1997); *Davis v. Ciba-Geigy Corp.*, 958 F. Supp. 264, 265 (M.D. La. 1997) (denying plaintiff's motion to remand and finding federal question jurisdiction over Title VII claims and supplemental jurisdiction over state-law discrimination and defamation claims because they were "directly related to the federal claim"); *Rumfola v. Total Petrochemical USA, Inc.*, C.A. No. 10-cv-460, 2012 WL 860405 at *1 n. 1 (M.D. La. Mar. 13, 2012) (finding supplemental jurisdiction over state law retaliation and defamation claims where all claims arose out of a common nucleus of operative facts); *Lozada v. Regal Ware, Inc.*, 564 F. Supp. 2d 715, 718 (W.D. Tex. 2008) (holding the existence of supplemental jurisdiction over state law claims of negligence, invasion of privacy, IIED, gross negligence and alleged discrimination claims as those as well as the federal claims had a common nucleus of operative facts).

15.

Claims constitute a single case or controversy when they "derive from a common nucleus of operative fact, such that one would expect them to be tried in a single judicial proceeding." *Hankins*

*v. Yellow Fin Marine Servs., LLC*, C.A. No. 2:2015-cv-2494, 2015 WL 9004447 at *3 (E.D. La. Dec. 16, 2015) (unpublished) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). Even a "loose factual connection between the [federal and state] claims is generally sufficient to meet the common-nucleus standard." *Id.*

16.

Supplemental jurisdiction "applies with equal force to cases removed to federal court as to cases initially filed there; a removed case is necessarily one of which the district courts . . . have original jurisdiction." *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 165 (1997).

In addition to the statutory factors in 28 U.S.C. § 1367, a court must consider concerns relating to comity balanced against the purposes of exercising supplemental jurisdiction, *i.e.*, "judicial economy, convenience and fairness to the litigants."  *See Woodward v. Andrus*, C.A. No. 2:03-cv-2098, 2010 WL 3704610 at *3 (W.D. La. Sept. 10, 2010), *quoting Gibbs*, 383 U.S. at 726.

17.

Plaintiffs allege numerous actions by Defendants on which they base their federal discrimination claims. *See* Petition at ¶¶ 6(A)-6(HH). *See also* ¶¶ 4-5, 7-11, 13, 14.  Plaintiffs also allege those actions form the bases for their state law claims.  For example:

(a)     Paragraphs 6 and 15-21 are intertwined.

(b)     Paragraphs 6 and 22 are interrelated.

(c)     Paragraph 23 claims Defendants are liable for intentional infliction of emotional distress based on "conduct described in the pleadings."

(d)     Paragraphs 27 to 30 are related to/intertwined with Plaintiffs' discrimination and retaliation claims and the damages they seek therefor.

18.

This Court, therefore, has and should exercise Supplemental Jurisdiction over Plaintiffs' state law claims.

## Diversity Jurisdiction

**In General**

19.

In the event that this Court ultimately decides not to exercise supplemental jurisdiction, it has diversity jurisdiction as well as one can see below.

20.

28 U.S.C. § 1332 states:

The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between –

(1) citizens of different States;

(2) citizens of a State  and citizens of a foreign state, except that the district courts shall not have original jurisdiction under the subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent resident in the United State and are domiciled in the same State.

**Amount in Controversy**

21.

Courts initially examine the state court petition to determine the amount in controversy.

*Manguno v. Prudential Property & Casualty Ins. Co.* 276 F.3d 720, 723 (5th Cir. 2002).

22.

Plaintiffs seek mental anguish and punitive damages.  *See* Petition under the Prayer at subparagraphs 5) thru 9).

23.

UIU employs over 500 persons.  Wedo Declaration.

24.

Plaintiffs can, therefore, recover up to $300,000 in mental anguish and punitive damages.  42 U.S.C. §1981a(a) and (b).

25.

Plaintiffs, who were part-time instructors, also not only seek back and front pay,[5] but also seek such amounts as if they were tenured full-time instructors.  *See* Petition at ¶¶ 26, 32, and Prayer at subsection 2).  The difference between their earnings and the lowest paid tenured professor is easily well above $75,000 apiece.  *See* Wedo Declaration, to which are attached the W-2s of Ms. Miller and Ms. Picard.

26.

Plaintiffs can recover liquidated damages under the ADEA, assuming *arguendo* that they have not waived their administrative remedy.  *See* 29 U.S.C. § 626 (incorporating liquidated damages provision of Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b)).  In other words, one would double the back pay figure upon a finding of a willful violation.  *See* 29 U.S.C. § 216(b).

27.

Where the petition does not include a specific monetary demand such as herein, the removing party must establish by a preponderance of the evidence that the amount in controversy exceeds

---

[5]      Plaintiffs do not specifically seek front pay.  However, they do seek injunctive relief, as well as other remedies available to them at law.  Petition at the Prayer under subparagraphs 2) and 12).

Front pay is available when injunctive relief is impractical.  *Kucia v. Southeast Arkansas Community Action Corp.*, 284 F.3d 944, 948-49 (8th Cir. 2002); *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 169 (2d Cir. 1998); *Weaver v. Amoco Prod. Co.*, 66 F.3d 85, 88 (5th Cir. 1995); *Squires v. Bonser*, 54 F.3d 168, 173 (3d Cir. 1995), *as amended on rehearing* (May 8, 1995), *as amended on rehearing* (June 22, 1995).

$75,000.  *Manguno*, 276 F.3d at 723, *citing De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995); *Lozano v. Schoellerman*, 2009 WL 211080, 1 (S.D. Tex. 2009).

This requirement is met if (1) it is <u>apparent from the face of the petition that the claims are likely to exceed $75,000</u>; or, alternatively, (2) the defendant sets forth "summary judgment type evidence" of facts in controversy that support a finding of the requisite amount.  *Manguno*, 276 F.3d at 723, *citing Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999); *Allen v. R&H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir. 1995).

Furthermore, if a statute provides for attorney fees, such fees are also included in determining the amount in controversy.  *Manguno*, 276 F.3d at 723; *Foret v. Southern Farm Bureau Life Ins. Co.,* 918 F.2d 534, 537 (5th Cir. 1990).

28.

Title VII authorizes attorney fee awards to prevailing parties. 42 U.S.C. § 2000e-5(k).  *See also* 29 U.S.C. § 626(b) (ADEA authorizing in ADEA cases attorney fee awards by incorporation of the FLSA's attorney fee provision, 29 U.S.C. § 216(b)).  Likewise, the Louisiana statute establishing a cause of action for whistleblower retaliation authorizes awards of reasonable attorney fees and court costs to prevailing parties. La. Rev. Stat. 23:967(B).

29.

As one can see from the Petition itself, Plaintiffs make no specific demand, except as set forth in the Petition at ¶ 32 and the Prayer for Relief.  There, they specifically seek back pay, injunctive relief, mental anguish damages, loss of consortium and punitive damages, costs, attorney fees and any other remedy authorized by law.

30.

In sum, whether based on the face of the Petition or otherwise (*see* Wedo Declaration),[6] they

are clearly seeking in excess of $75,000.

**Fraudulent Joinder**

**The Petition and Generally Applicable Principles**

31.

The Petition alleges the following claims:

| Claim | Defendants |
|---|---|
| Race discrimination under federal law[7] | UIU, Adams, Bentley, Franken, Duffy |
| Retaliation under federal law[8] | UIU, Adams, Bentley, Franken, Duffy |
| Whistleblowing | UIU, Adams, Bentley, Franken, Duffy |
| Breach of contract | UIU, Adams, Bentley, Franken, Duffy |
| Unjust enrichment | UIU, Adams, Bentley, Franken, Duffy |
| Defamation | UIU, Adams, Bentley, Franken, Duffy |
| Invasion of privacy | UIU, Adams, Bentley, Franken, Duffy |
| Failure to maintain safe work environment | UIU, Adams, Bentley, Franken, Duffy |
| Assault | Bentley |
| Intentional and negligent infliction of emotional distress | UIU, Adams, Bentley, Franken, Duffy |

---

[6]        Plaintiffs claim that they should have been paid the same as tenured professors going back no more than two years (42 U.S.C. §2000e-5(g)(1)) and then going forward until trial, mental anguish and punitive damages, as well as costs and attorney fees.

[7]        It is not obvious that Plaintiffs seek relief under La. R.S. 23:301, *et seq*.  If they do, they have not stated a claim against the Individual Defendants under federal or state law for which relief can be granted.  The Individual Defendants are not employers.

[8]        *See*  fn. 7

32.

A Plaintiff cannot prevent removal by improperly joining a non-diverse defendant.  *See, e.g.,*
*Anderson v. Georgia Gulf Lake Charles, LLC*, 342 F. App'x 911, 915 (5th Cir. 2009); *Borden v.*
*Allstate Ins. Co.*, 589 F.3d 168 (5th Cir. 2009); *Carriere v. Sears Roebuck & Co.*, 893 F.2d 98, 100-
01 (5th Cir. 1990).

Courts determine whether non-diverse parties have been improperly joined by examining the
claims against the non-diverse parties using a Fed. R. Civ. P. 12(b)(6) standard and/or a summary
judgment like proceeding to see whether there is a reasonable possibility under state law that a non-
diverse defendant could be liable for the claims asserted against him/her/it.  *Id.  See also Smallwood*
*v. Illinois Central RR Co.*, 385 F.3d 568, 573 (5th Cir. 2004); *Hornbuckle v. State Farm Lloyds*, 385
F.3d 538(1) (5th Cir. 2004); *Ross v. CitiFinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003).

**The Petition Does Not State a Claim Against One Non-Diverse and Improperly Joined**
**Defendant (Ms. Bentley) and/or the Non-Diverse and Improperly Joined Defendant (Ms.**
**Bentley) Would Summarily Prevail.**

**A.     Plaintiffs' Diversity Credentials.**

33.

Ms. Miller and Ms. Picard assert that they are Rapides Parish residents.  *See* Petition at ¶ 1.

**B.     Defendants' Diversity Credentials.**

34.

UIU is an Iowa corporation.  *See* Petition at p. 1.   This is true.

35.

Plaintiffs, however, assert that Tiffany Adams, William Duffy and Kathy Franken are
residents of and domiciled in Rapides Parish.  These allegations are untrue.  *See* (Adams) Johansen,

Duffy and Franken Declarations.[9]

Cynthia Bentley does not reside in Rapides Parish.  *See* Bentley Declaration.  But, she is a Louisiana citizen, who was also improperly joined to defeat diversity.

**C.    Conclusory Allegations Cannot Defeat Removal.**

36.

Conclusory statements and/or statements of ultimate facts cannot defeat a Fed. R. Civ. P. 12(b)(6) and/or 56  motion (*see, e.g., Ashcraft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949-50 (2009)), and/or a properly supported motion for summary judgment. *Cooper v. Dallas Police Ass'n*, 278 F. App'x 318, 321; 2008 WL 2037265, 3 (5th Cir. 2008); *Barkley v. Dillard Dept. Stores, Inc.*, 277 F. App'x 406, 413; 2008 WL 1924178 (5th Cir. 2008); *Johnson v. Pointe Coupee Parish Police Jury*, 261 F. App'x 668, 671; 2008 WL 64659, 3 (5th Cir. 2008).

37.

Hearsay statements are out-of-court statements offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Hearsay is not admissible unless federal statutes or court rules provide otherwise. Fed. R. Evid. 802.  Hearsay allegations do not state a claim.  *See Ameen v. Merck & Co.*, 226 F. App'x 363, 371 (5th Cir. 2007) (unpublished) (inadmissible hearsay cannot serve as a basis for remand).

Plaintiffs' allegations regarding out-of-court statements made by other UIU employees (who are not parties), UIU students or any other person (*see* Petition at ¶¶ 6 G, H, O, Q, R, S, U, V, X, and FF) are inadmissible hearsay and do not preclude removal of this action.

---

[9]        *See* Exhs. 3, 5 and 6.  They are Iowa citizens.  Defendants should not have been required to dispel the alleged citizenship of Ms. (Adams) Johansen, Dr. Duffy and Ms. Franken.

**D.    The Individual Defendants Are Not Employers.**

**1.    The employer test.**

38.

Employers under Title VII are those persons who employ 15 or more people. 42 U.S.C. §2000e(b); *Poche v. Travelers Ins. Cos.*, Civ. Action No. 95-1467, 1995 WL 442050 at *1 n. 1 (E.D. La. July 25, 1995). Employers under ADEA are those persons who employ 20 or more people. 29 U.S.C. § 630(b).

State employment discrimination and retaliation claims only apply to employers. An employer under Louisiana law is "a person, association, legal or commercial entity ... receiving services from an employee and, in return, giving compensation of any kind to an employee." La. Rev. Stat. 23:302(1).

**2.    The Petition fails to state a claim against non-employers, such as the Individual Defendants, for employment discrimination, retaliation and whistleblowing, as well as breach of contract.**

39.

Plaintiffs do not allege that they were employed by one or more of the Individual Defendants, and for good reason.  None of the Individual Defendants employed Miller and/or Picard.  *See* the Adams, Bentley, Duffy and Franken Declarations.

40.

The Individual Defendants do not meet the definition of an employer and cannot be held individually liable for employment discrimination under federal or state law.  Plaintiffs, therefore, fail to state a claim for which relief can be granted for age and race discrimination or retaliation under federal and state law against Ms. Bentley as well as the other Individual Defendants.  *Ackel v. Natl. Commc'ns, Inc.*, 339 F.3d 376, 381 n. 1 (5th Cir. 2003) (holding that "Individuals are not liable under Title VII in either their individual or official capacities."); *Johnson et al. v. Acosta et al.*, Civ.

Action No. 10–1756, 2010 WL 4025883 (E.D. La., 2010 Oct. 12, 2010) (holding that "Louisiana's antidiscrimination law provides no cause of action against individual employees, only against employers."); *Wright v. Sears Roebuck & Co.*, No. 09-1498, 2010 WL 148173 at *3 (W.D. La. Jan. 12, 2010) (same).

41.

Whistleblowing claims can only be brought against employers.  La. R.S. 23:967.  Plaintiffs, therefore, have not stated a claim for violation of La. R.S. 23:967 for which relief can be granted against Ms. Bentley and the remaining Individual Defendants.  *Sebble v. NAMI New Orleans, Inc.*, Civ. Action No. 17-10387, 2018 WL 929604 at *2 (E.D. La. Feb. 16, 2018) (holding that the definition of "employer" under Louisiana's antidiscrimination law applies to claims brought under Louisiana's Whistleblower Statute).

42.

Miller and Picard do not allege, other than implicitly conclusorily, that they contracted with any of the Individual Defendants.  In fact, Individual Defendants did not contract with Miller and/or Picard.  *See* Declarations of Adams (Johansen), Bentley, Duffy and Franken.  Moreover, the fact that the Individual Defendants did not employ Plaintiffs should also be dispositive of the breach of contract claim.  *See also* Wedo Declaration reflecting contracts with UIU, not the Individual Defendants.

43.

Plaintiffs, therefore, have not stated a claim for breach of contract for which relief can be granted against Ms. Bentley and the rest of the Individual Defendants.

**E.     Unjust Enrichment.**

44.

Plaintiffs seek damages for unjust enrichment.  Petition at  ¶¶ 25 and 26.  There, they assert

13

breach of direct and implied contracts to perform in good faith.  They seek damages equal to the pay of long-term tenured professors at traditional universities.

45.

La. Code Civ. art. 2298 states:

A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

The five requirements for a showing of unjust enrichment are: (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) there must be no other remedy at law available to plaintiff. *Minyard v. Curtis Products*, 205 So.2d 422 (La. 1967); *Edmonston v. A-Second Mortgage Co. of Slidell, Inc.,* 289 So.2d 116 (La. 1974); *Baker v. Maclay Properties Co.*, 94-1529 (La. 1/17/95), 648 So.2d 888, 897; La. Civ. Code art. 2298.

In *Morphy, Makofsky & Masson, Inc. v. Canal Place 2000*, 538 So.2d 569, 575 (La. 1989), the court held that the existence of a claim on an express or implied contract precludes application of the unjust enrichment theory, because the potential claim constitutes a practical remedy at law available to the purported impoverishee.  *See also Carriere v. Bank of Louisiana,* 95–3058, p. 17 (La. 12/13/96), 702 So.2d 648, 671 (on rehearing) (holding the remedy of unjust enrichment is subsidiary in nature, and "shall not be available if the law provides another remedy").

46.

Plaintiffs entered into a series of written contracts with UIU.  Their more recent contracts are attached.  *See* Wedo Declaration.

14

47.

These contracts and the allegations in ¶¶ 25-26 preclude Plaintiffs' unjust enrichment claim. Plaintiffs, therefore, do not state a claim against Ms. Bentley and the remaining Defendants for unjust enrichment.

**F.      Defamation.**

48.

The elements of a defamation claim are (1) a false and defamatory statement concerning another, (2) an unprivileged publication to a third party, (3) fault (negligence or greater) on the part of the publisher, and (4) resulting injury. *UHS of New Orleans, Inc. v. American Medical Clinics, Inc.*, Civ. Action No. 98-1441, 1998 WL 832573 at *2 (E.D. La. Nov. 24, 1998) (citing *Trentecosta v. Beck*, 703 So.2d 552, 559 (La. 1997)).

49.

Plaintiffs accuse all Defendants of defamation.  *See* Petition at ¶ 22. Specifically, Plaintiffs allege that Defendants' intentional or reckless disregard for Plaintiffs' concerns of wrongful conduct and increasing hostility and violence in the workplace caused the malicious publication of false statements to third parties about Plaintiffs which caused damages. *Id.*

50.

Plaintiffs do not allege that Ms. Bentley or any other Individual Defendant made any false or defamatory statement.  Nor do Plaintiffs assert that Ms. Bentley or the remaining Individual Defendants published any such statement to a third party.  Rather, they allege only that Plaintiffs' concerns caused publication of such statements by unnamed tortfeasors.

51.

Moreover, one cannot ascertain whether the alleged communications were in fact defamatory.  Nor can one tell if the communications were truly sent to a third person or were intra-

corporate in nature.  Intra-corporate communications do not constitute publication.  *Cangelosi v. Schwegmann Bros. Giant Supermarkets*, 390 So.2d 196, 198 (La. 1980).

52.

In sum, Plaintiffs' defamation allegations are vague and conclusory.  Because Plaintiffs fail to state a claim against Bentley, the only non-diverse Defendant, she was improperly or fraudulently joined.

**G.      Invasion of Privacy.**

53.

Plaintiffs allege that Defendants invaded their privacy.  More specifically, Plaintiffs alleged Defendants:

> ... purposefully, intentionally, recklessly and negligently allow[ed] [their] employee files and personnel information to be located in a public domain.  Defendants did intentionally cause Plaintiffs personal information to be exposed to disgruntled students, their family members, and to unknown other third parties which has caused damage to Plaintiffs by causing the invasion into the seclusion and solitude of Plaintiffs' private lives ...

*See* Petition at ¶ 24.

54.

Invasion of privacy in Louisiana refers to four interests: 1) appropriation of individual's name or likeness for the use or benefit of the defendant; 2) unreasonable intrusion by the defendant upon the plaintiff's physical solitude or seclusion; 3) publicity that unreasonably places plaintiff in false light before public; and 4) unreasonable public disclosure of embarrassing private facts. *Frigon v. Universal Pictures, Inc.*, 255 So.3d 591, 599 (La. App. 1 Cir. 6/21/18) (citing *Jaubert v. Crowley Post-Signal, Inc.*, 375 So.2d 1386, 1388 (La. 1979)).

55.

The Petition literally does not state what information was disclosed and when.  Nor does it claim that Defendants invaded Plaintiffs' privacy.  Rather, Defendants' alleged location of employee files and personnel information in a public domain somehow caused other persons to invade the seclusion and solitude of Plaintiffs' private lives.

56.

Plaintiffs do not allege that Ms. Bentley appropriated their names or likenesses or that she placed them in a false light. Further, Plaintiffs do not claim that Ms. Bentley physically intruded on their seclusion and solitude.

57.

Likewise, Plaintiffs do not claim that Ms. Bentley publicly disclosed embarrassing private facts about Plaintiffs.

58.

The allegations contained in ¶ 24 are conclusory and vague.  There are no other invasion of privacy allegations in the Petition.

59.

To the extent this Court requires more, Defendants believe that Ms. Picard, and only Ms. Picard, is complaining about "disclosure" of her credentials going back into 2015.

60.

Ms. Bentley had nothing to do with credentialing and did not leave such information in a public area prior to or after she became the South Central Regional Director.[10]

---

[10]      Ms. Bentley was the Baton Rouge Center Director until May 17, 2017.  Ms. Meredith Clark was the Alexandria Center Director until May 19, 2017.  Ms. Lydian Miles replaced Ms. Clark on or about January 8, 2018.  *See* Wedo and Bentley Declarations.

Prior to July 1, 2017, Center Directors handled credentials.[11]   *See* Adams and Wedo Declarations.

After July 1, 2017, credentialing of instructors, such as Picard, was handled by either the Academic Dean or the Faculty Department Chair.  *See* Adams and Wedo Declarations.  *See also* pp. 18-19, *infra* (negligence allegations do not state a claim).

61.

Plaintiffs have failed to state a claim against at least Ms. Bentley for invasion of privacy. Her joinder was, accordingly, improper.

**H.    Failure to Maintain Safe Work Environment and Negligent Infliction of Emotional Distress.**

62.

Plaintiffs allege that all Defendants owed a duty to Plaintiffs to prevent workplace violence and encourage a safe place to work.  *See* Petition at ¶ 15.  Plaintiffs further allege that Defendants breached that duty by failing to follow UIU's Workplace Violence Procedure and take preventative measures that caused Plaintiffs to be intimidated, bullied and subjected to a reasonable belief of receiving harm to their persons or property.  *See* Petition at ¶ 16.

63.

La. R.S. 23:13, which is part of Louisiana Workers Compensation Act, provides that an **employer** has a duty to exercise reasonable care to protect its employees if the employer knows or should know of a dangerous condition or person on its premises. *See also Carr v. Sanderson Farms, Inc.*, 215 So.3d 437, 441 (La. App. 1 Cir. 2/17/17).

64.

The Louisiana Workers Compensation Act provides an employee's exclusive remedy for

---

[11]      *Cf.* Petition at ¶ 6-D).  None of the Individual Defendants were ever the Alexandria Center Director.  *See* Adams, Bentley, Duffy, Franken and Wedo Declarations.

work-related injuries[12] and precludes civil liability except for injuries resulting from intentional acts. La. R.S. 23:1032.

65.

A claim under La. R.S. 23:13 is a negligence-based claim.  *Horswill v. Louisville Ladder Corp.*, C.A. No. 94-3891, 2995 WL 517125 at *2 n. 1 (E.D. La. Aug. 30, 1995).   Therefore, employees may not bring claims for an employer's alleged violation of La. R.S. 23:13, unless exempted by statute from the Workers Compensation Act. *Id.*[13]  Plaintiffs' allegations against UIU regarding failure to provide a safe workplace do not state a claim upon which relief can be granted due to the exclusivity provisions of La. R.S. 23:1032.

66.

La. R.S. 23:1032 similarly precludes civil lawsuits by company employees against a company's executive officers and co-employees for work-related injuries, except intentional tort claims.  *Kemp v. CTL Distribution, Inc.*, 440 F. App'x 240, 244 n. 1 (5th Cir. 2011); *Courtney v. BASF Wyandotte Corp.*, 385 So.2d 391 (La. App. 1 Cir. 1980).  Plaintiffs' allegations against Ms. Bentley and the other Individual Defendants regarding a safe workplace, therefore, fail pursuant to La. R.S. 23:1032.

67.

Because Plaintiffs' allegations against Ms. Bentley and the other Individual Defendants fail to state a claim upon which relief can be granted for failure to maintain a safe workplace, Ms. Bentley – the only non-diverse Defendant – was improperly joined.

---

[12]     Plaintiffs have not filed any claim under the Workers Compensation Act.  *See* Wedo Declaration.

[13]     Plaintiffs' age and race discrimination as well as retaliation claims are examples.  The invasion of privacy allegations and failure to maintain a safe work environment are not.  To the extent that Plaintiffs even state an assault claim below, it is also seemingly barred by Section 1032.

I.      **The [Non-Assault] Assault Claim Because**
        **the Intentional Tort Allegation is Conclusory.**

68.

Plaintiffs assert that Ms. Bentley only is liable to them for assault.  Petition at ¶21.  In reality, as one can see below, she is accused of a non-assault assault.[14]

69.

Under Louisiana law, "[a]n assault occurs when an intentional threat of battery, or harmful or offensive contact, places one in reasonable apprehension of receiving an injury." *Gressett v. Southwest Airlines Co.*, 216 F. Supp. 3d 743, 750 (E.D. La. 2016) (citing *McVay v. Delchamps, Inc.*, 707 So.2d 90, 93 (La. App. 5 Cir. 1/14/98); *Castiglione v. Galpin*, 325 So.2d 725, 726 (La. App. 4 Cir. 1976); *State in re Cortez*, 319 So.2d 496, 497 (La. App. 4 Cir. 1975). "The law clearly provides for a colorable assault claim only when the threat is one of physical violence." *Id.*

70.

Plaintiffs literally do not allege that Bentley intentionally threatened Plaintiffs with physical violence.

Rather, Plaintiffs assert that Ms. Bentley, while an employee of UIU, somehow caused Plaintiffs to be assaulted by students who are not named as defendants.  *See* Petition at ¶21. Therefore, the Petition does not state a claim for assault against Bentley.

Alternatively, the claim against Ms. Bentley is barred by La. R.S. 23:1032.

J.      **Intentional Infliction of Emotional Distress.**

71.

Ms. Picard and Ms. Miller assert that Defendants are liable for intentional infliction of

---

[14]     Ron Zeigler was President Nixon's press secretary during Watergate.  He was accused of communicating on behalf of President Nixon a non-denial denial in response to allegations against Mr. Nixon at one point.

emotional distress ("IIED").  Petition at ¶ 23.

72.

The Louisiana Supreme Court has recognized that plaintiffs could establish an IIED claim by

showing the following:

1.     Conduct which is outrageous to such a degree "as to go beyond all possible bounds
       of decency, and to be regarded as atrocious and utterly intolerable in a civilized
       community;"

2.     Severe emotional distress, *i.e.*, "distress ... [which] no reasonable person could be
       expected to endure;"

3.     The severe emotional distress is caused by the outrageous conduct; and

4.     Defendant "desired to inflict severe emotional distress or knew that severe emotional
       distress, as opposed to fright, anxiety or worry, would be certain or substantially
       certain to result from his conduct."

*White v. Monsanto Co.*, 585 So.2d 1205, 1209-10 (La. 1991).

Liability, however, does not extend to mere insults, indignities, threats, annoyances, petty

oppressions or other trivialities. *White*, 585 So.2d 1205, 1209.  Persons must necessarily be expected

to be hardened to a certain amount of rough language, and to occasional acts that are definitely

inconsiderate and unkind.  *Id.*   Not every verbal encounter may be converted into a tort; on the

contrary, "some safety valve must be left through which irascible tempers may blow off relatively

harmless steam."  *Id.*

The identity of the alleged inflictors matters, as one can see from the following:

The extreme and outrageous character of the conduct may arise from an abuse by the
actor of a position, or a relation with the other, which gives him actual or apparent
authority over the other, or power to affect his interests. . . .  Thus, many of the cases
have involved circumstances arising in the workplace. . . .  A plaintiff's status as an
employee may entitle him to a greater degree of protection from insult and outrage
by a supervisor with authority over him than if he were a stranger.  ...

*Id.* at 1209-10.  *See also Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1026 (La. 2000) (stating that IIED in the workplace is a recognizable tort in Louisiana only where there is "a pattern of repeated harassment over a period of time.").[15]

73.

Plaintiffs do not expressly allege in ¶ 23 (or elsewhere) that Ms. Bentley or any other Defendant engaged in a pattern of deliberate, repeated harassment over a period of time.

74.

Nor is it evident that Adams (Johansen), Bentley or Franken had actual or apparent authority over Plaintiffs.  Dr. Duffy was and is UIU's President.  His involvement herein, however, is minimal.  Petition at ¶¶ 6-Y) and 20.

75.

Boilerplate allegations, such as those contained in ¶ 23, do not state a claim.  *See Barber v. Marine Drilling Mgmt., Inc.*, C.A. No. 01-1986, 2002 WL 237848 at *9 (E.D. La. Feb. 15, 2002) (dismissing IIED claim where complaint simply set forth boilerplate legal conclusion of IIED and was devoid of any allegations of fact that described outrageous and atrocious conduct by the defendant).

76.

Plaintiffs allege they were harassed by students or other persons who are not named as Defendants in this action.  *See, e.g.*, Petition at ¶¶ 6(E)-(G), (O), (Q)-(U), (W)-(Y), (FF)-(HH), and ¶ 7.

---

[15]      "Conduct which is merely tortious or illegal does not rise to the level of being extreme and outrageous."  *Nicholas*, 1999-2522 (La. 8/31/00), 765 So.2d 1017, 1025.

77.

Plaintiffs also allege that Defendants directed Plaintiff Miller to change a student's grade, that Bentley pulled senior projects from Plaintiffs, that Defendants stopped giving classes to Plaintiffs, that Bentley was argumentative and caused student tempers to flare extraordinarily, and that Bentley reduced Plaintiffs' compensation and duties in an attempt to cause them to leave their employment. *See* Petition at ¶¶ 6(Z)-(BB), (FF), and ¶ 10.

78.

"Ordinary employment disputes, even those involving discrimination ... will rise to the level of IIED only in the most unusual of cases." *Griffith v. Louisiana*, 808 F. Supp.2d 926, 935 (E.D. La. 2011).

79.

Even if Plaintiffs' allegations describe retaliatory acts by Ms. Bentley, those acts in and of themselves do not rise to the level of IIED simply because they are retaliatory. *Id.* (throwing checks at plaintiff, accusing her of misplacing checks, accusing her of exceeding her authority, and intentional firing after making a complaint of harassment are not actionable as IIED); *Greenwell v. Raytheon Aerospace, Inc.*, C.A. No. 95-2138, 1996 WL 63093 at *3 (E.D. La. Feb. 13, 1996) (alleged retaliation by demotion and transfer to different military base not sufficient to constitute IIED).

80.

In fact, courts applying Louisiana law routinely dismiss IIED claims alleging actions more specific and severe than those alleged by Plaintiffs in this action. *See, e.g.*, *Washington v. Mother Works, Inc.*, 197 F. Supp. 2d 569, 572 (E.D. La. 2002) (repeated racial slurs, ridicule for missing work to care for a mother who was suffering from cancer, differing treatment than other managers, and termination did not rise to a level of extreme and outrageous to state IIED claim); *Smith v.*

*Ouachita Parish Sch. Bd.*, 702 So.2d 727 (La. App. 2 Cir. 9/24/97) (holding that the wrongful demotion and transfer of a teacher within the school system, though causing emotional and psychological distress, did not constitute extreme and outrageous conduct); *Stewart v. Parish of Jefferson*, 668 So.2d 1292 (La. App. 5 Cir. 1/30/96) (holding that IIED was not shown, even though a supervisor maintained two-year's harassment in which he questioned the worker's personal life, increased the workload, and pressured the employee to accept a demotion which ultimately led to the employee's termination); *Beaudoin v. Hartford Acc. & Indem. Co.*, 594 So.2d 1049 (La. App. 3 Cir. 1992) (holding that even if the employee felt singled out for abuse, a supervisor's eight-month undertaking in which he shouted at an employee, cursed her, called her names (dumb, stupid and fat), commented about the inferiority of women, and falsely accused her of making mistakes did not constitute extreme and outrageous conduct); *Trahan v. Bellsouth Tel., Inc.*, 881 F. Supp. 1080 (W.D. La. 1995) (holding that employers use of a security team to ridicule, tease, and taunt plaintiff for seven and one-half hours questioning was not conduct which was outrageous).

81.

Because Plaintiffs' allegations against Ms. Bentley are not sufficient to satisfy the extreme and outrageous standard, they have failed to state a claim for IIED on which relief can be granted. Therefore, Bentley, the only non-diverse Defendant, was improperly joined.

## CONCLUSION

82.

Plaintiffs' employment discrimination and retaliation claims are clearly federal questions that are removable.

83.

Likewise, this Court has Supplemental Jurisdiction since the facts are so interrelated that they form a common nucleus of operative facts.

Moreover, in order to avoid trying at least portions of this case in state and federal court, this Court should exercise Supplemental Jurisdiction.

84.

Ms. Miller and Ms. Picard are very different individuals.  This Court should exercise Supplemental Jurisdiction to avoid the possibility that one of the Plaintiffs' claims are tried in state court.[16]

85.

Four of the five Defendants are Iowa residents.

86.

There is diversity jurisdiction given that the state law claims against Ms. Bentley do not state a claim under Fed. R. Civ. Proc. 12(b)(6) and/or 56.[17]

WHEREFORE, Defendants, Upper Iowa University, Cynthia Bentley, Tiffany Adams, Kathy Franken and William Duffy, pray that said state court action be removed from the Ninth Judicial District Court for the Parish of Rapides, State of Louisiana, to the United States District Court for the

---

[16]     Plaintiffs complain that a student threatened to go to Dr. Duffy.  *See* Petition at ¶ 6-Y).  The matter was resolved by Dr. Ed Hufstetler to Miller's satisfaction.  *See* attached Declaration of Dr. Ed Hufstetler (Exh. 7).  Defendants urge this Court to read it to note a specific law and the way Ms. Miller positively responded to Dr. Hufstetler.

[17]     There are often and generally two sides to every story.  Some parties understate their positions.  Ms. Picard, a lawyer as well as a party to this matter, is not one of those people.

Western District of Louisiana, and that henceforth, this action be placed on the docket of this Court for further proceedings as though the action had been originally instituted in this Court.

*/s/ Ellis B. Murov*
ELLIS B. MUROV, T.A. (9839)
ANDREW J. BAER (35638)
DEUTSCH KERRIGAN, L.L.P.
755 Magazine Street
New Orleans  LA  70130
Telephone:  504-581-5141
emurov@deutschkerrigan.com
abaer@deutschkerrigan.com
Attorneys for Defendants, Upper Iowa
University, Cynthia Bentley, Tiffany Adams,
Kathy Franken and William Duffy

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Notice of Removal has been served upon:

Deirdre Fuller, Esq.                          Laura Picard, Esq. (*Pro Se*)
Fuller Law Firm, LLC                          242 W. Shamrock Street
602 Murray Street                             Pineville, Louisiana  71360
Alexandria, Louisiana 71301

through this Court's CM/ECF system, by e-mail, fax, by hand and/or by placing same in the U.S.

Mail, postage prepaid and properly addressed, this 14th day of January, 2019.

/s/ Ellis B. Murov
ELLIS B. MUROV
