UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| JANICE MILLER, ET AL.,<br>Plaintiffs | CIVIL DOCKET NO. 1:19-CV-00039 |
| VERSUS | |
| UPPER IOWA UNIVERSITY,<br>ET AL.,<br>Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## MEMORANDUM OPINION

Defendants Upper Iowa University ("UIU"), Cynthia Bentley ("Bentley"), Tiffany Adams [Johansen] ("Adams"), Kathy Franken ("Franken"), and Dr. William Duffy ("Duffy") filed a Motion to Partially Dismiss (ECF No. 18) and a Motion to Partially Dismiss Whistleblower Claims against UIU (ECF No. 27).

Because Plaintiffs failed to adequately plead some of their claims, Defendants' Motion to Partially Dismiss (ECF No. 18) is GRANTED. And because the Louisiana Employment Discrimination Law ("LEDL") is inapplicable to Plaintiffs' whistleblower claims, Defendants' Motion to Dismiss Whistleblower Claims against UIU (ECF No. 27) is DENIED.

## I.   Procedural Background

Plaintiffs Janice Miller ("Miller") and Lauri Picard ("Picard") were adjunct professors at UIU working at the Alexandria, Louisiana campus. They filed a petition against Defendants in state court in 2018.

UIU is a private university. Bentley, Adams, Franken, and Duffy are all employees or contract agents of UIU. Bentley is the South Central Regional Director of UIU (ECF No. 1-4); Adams was the Director of Human Resources for UIU (ECF Nos 1-3); Duffy is the President of UIU (ECF No. 1-5); and Franken is the Vice-President of Enrollment for Enrollment Management for UIU (ECF No. 1-6).

Plaintiffs allege that, from 2016 through 2018, students, faculty, and staff at the UIU Alexandria campus were "bullied and intimidated by other students with a pervasive atmosphere of racial discrimination, intimidation, harassment, and violence in the workplace." (ECF No. 9-1). Plaintiffs contend the bullies were a group of African-American students who were hostile and threatening toward both African-American and Caucasian faculty. (ECF No. 9-1). Plaintiffs further allege that, when they brought the problem to the attention of UIU and the individual Defendants, they were ignored, retaliated against, then constructively terminated. (ECF No. 1-1). Plaintiffs further contend Defendant Bentley, the Regional Director for the UIU Alexandria campus, caused Plaintiffs to be assaulted, intimidated, bullied, and in reasonable fear of imminent harm for their safety. (ECF No. 1-1).

Plaintiffs allege employment discrimination, retaliation, failure to maintain a safe work environment, failure to maintain whistle-blowing policies, whistle-blowing retaliation, assault, defamation of character, negligent and intentional infliction of emotional distress, invasion of privacy, unjust enrichment, and breach of contract. (ECF Nos. 1-1, 9-1). Plaintiff allege violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; UIU's workplace violence procedures; UIU's whistle-

blower procedures; and whistle-blower law. (ECF No. 1-1). Plaintiffs seek injunctive relief, back pay, special and general damages, attorney's fees, and costs. (ECF No. 1-1).

Defendants removed and allege federal question jurisdiction under Title VII and supplemental jurisdiction. In the alternative, Defendants allege diversity jurisdiction, contending Defendant Bentley was improperly joined.[1]

Defendants filed an answer (ECF No. 17) and a Motion to Partially Dismiss claims against all Defendants. (ECF No. 18). Plaintiffs responded to that motion (ECF Nos. 26, 28), and Defendants replied (ECF No. 31).

Defendants also filed a Motion to Partially Dismiss Whistleblower Claims Against UIU. (ECF No. 27). Plaintiffs responded to the motion (ECF No. 38) and Defendants replied (ECF No. 41).

II.    <u>Law and Analysis</u>

A.    <u>Motion to Dismiss</u>

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). "[A] complaint will survive dismissal for failure to state a claim if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016), cert. den., 137 S. Ct. 489 (U.S. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal citation and quotation omitted).

---

[1] Plaintiffs and Defendant Bentley are citizens of Louisiana. The remaining Defendants are all citizens of Iowa. Defendants have not filed a Motion to Dismiss for improper joinder, and that issue is not discussed herein.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court must view all well-pleaded facts in the light most favorable to the plaintiff. *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016).

### B.   EEOC standards.

Title VII makes it unlawful "for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 513 (1993). In a Title VII claim, the plaintiff must establish a prima facie case that the defendant made an employment decision motivated by a protected factor. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1089 (5th Cir. 1995). The defendant bears the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason. *See Mayberry*, 55 F.3d at 1089. The burden then shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for discrimination. *See Mayberry*, 55 F.3d at 1089.

The district court must decide which party's explanation of the employer's motivation it believes. *See St. Mary's Honor Center*, 509 U.S. at 511. It is not enough to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination. *See id.*

C.    <u>Defendants' Motion to Partially Dismiss (ECF No. 18) is granted.</u>

Defendants contend the whistleblower allegations; invasion of privacy claim; IIED claim; discrimination, retaliation and breach of contract claims; and assault claim against the individual Defendants–Bentley, Adams, Franken, and Duffy– should be dismissed.

        1.    <u>Defendants' Motion to Dismiss Plaintiffs' claims against the individual Defendants for discrimination, retaliation, breach of contract, and whistleblowing is granted.</u>

Defendants contend that Plaintiffs' claims of discrimination, retaliation, breach of contract, and whistleblowing claims should be dismissed due to lack of an employer/employee relationship between the individual defendants and Plaintiffs.

The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person.  <u>See</u> 42 U.S.C.A. § 2000e(b).  The purpose of the "agent" provision in § 2000e(b) is to incorporate *respondeat superior* liability into Title VII.  *See Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994), cert. den., 513 U.S. 1015 (1994) (citing *Miller v. Maxwell's International, Inc.*, 991 F.2d 583, 584 (9th Cir. 1993), cert den., 510 U.S. 1109 (1994)).  Title VII does not impose liability on individuals unless they are "employers."  *See Provensal v. Gaspard*, 524 Fed. Appx. 974, 977 (5th Cir. 2013) (citing *Grant,* 21 F.3d at 653).

UIU was both Plaintiffs' employer and Bentley, Adams, Franken, and Duffy's employer.  Bentley, Adams, Franken, and Duffy were not Plaintiffs' employer, and

therefore could not be sued in their individual capacities under Title VII.  Moreover, Plaintiffs Miller and Picard contend the whistleblower and breach of contract claims are against UIU only.  (ECF Nos. 26, 28).  Plaintiffs concede the whistleblower claims against Bentley, Adams, Franken, and Duffy should be dismissed.

Therefore, Defendants' Motion to Dismiss Plaintiffs' claims for discrimination, retaliation, whistleblowing, and breach of contract against Bentley, Adams, Franken and Duffy is granted.

      2.    <u>Defendants' Motion to Dismiss Plaintiffs' claims for unjust enrichment against UIU is granted.</u>

Plaintiffs seek damages from UIU for unjust enrichment for their work that, over the years, contributed to the financial success and reputation of UIU.  Plaintiffs contend Defendant UIU deprived them of normal tenured employment and its benefits.[2]  Plaintiffs ask for damages equal to the pay of long-term tenured professors at traditional universities.

Plaintiffs have employment contracts that stipulate their rates of pay as adjunct faculty members.  (ECF No. 1-2, pp. 8, 10).  Plaintiffs were not tenured, and their employment contracts do not discuss tenure or pay as a tenured professor.  UIU contends that, because Plaintiffs have employment contracts, their compensation claims can be resolved pursuant to contract law.  Therefore, Plaintiffs are precluded from resorting to application of the unjust enrichment theory.  *See Morphy, Makofsky & Masson, Inc. v. Canal Place 2000*, 538 So.2d 569, 575 (La. 1989).

---

[2] Plaintiffs were adjunct professors at UIU.  (ECF No. 1-2, pp. 5, 7, 8, 10).

"[U]nder Louisiana law . . . [c]ourts may resort to equity only in cases of unjust enrichment for which there is no justification in law or contract. In other words, an enrichment is justified if it is the result of, or finds its explanation in, the term of a valid juridical act between the impoverishee and the enrichee or between a third party and the enrichee." *City of New Orleans v. BellSouth Telecommunications, Inc.*, 690 F.3d 312, 326 (5th Cir. 2012) (quoting *SMP Sales Mgmt., Inc. v. Fleet Credit Corp.,* 960 F.2d 557, 560 (5th Cir.1992), and *Carter v. Flanagan,* 455 So.2d 689, 692 (La. App. 2d Cir. 1984)); *see also Threadgill v. City of New Orleans*, 2013 WL 5538701, at *4 (E.D. La. 2013).

As Defendants contend, the fact that Plaintiffs have employment contracts with UIU, and were employed and paid pursuant to the terms of those contracts, precludes their cause of action for compensation from UIU under a theory of "unjust enrichment." Accordingly, Defendants' Motion to Dismiss Plaintiffs' claims for unjust enrichment against UIU (ECF No. 18) is granted.

### 3.  Plaintiffs' defamation claims against Bentley, Adams, Franken, and Duffy are dismissed.

Defendants argue that Plaintiffs' defamation claims should be dismissed for failure to state a claim. ECF No. 18.

To state a claim upon which relief may be granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name. *See Costello v. Hardy*, 2003-1146 (La. 1/21/04), 864 So.2d 129, 139 (citing *Fitzgerald v. Tucker,* 98–2313 (La. 6/29/99), 737 So.2d 706, 715). "Four elements are necessary to establish a defamation cause of action: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Costello*, 864 So.2d at 139 (citing *Trentecosta v. Beck,* 96-2388, p. 10 (La.10/21/97), 703 So.2d 552, 559); *see also Hardy v. Hartford Ins. Co.*, 236 F.3d 287, 292 (5th Cir. 2001). In order to prevail on a defamation claim, a plaintiff must prove "that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages." *Costello*, 864 So.2d at 139-40 (citing *Trentecosta*, 703 So.2d at 559); *see also Hardy*, 236 F.3d at 292.

In their Petition, Plaintiffs allege only that Defendants "cause[d] the malicious publication of false statements to third parties about the Plaintiffs which resulted in damages and caused harm." (ECF No. 1-1). Plaintiff Picard contends defamation was alleged in the Petition at paragraph 6(F) and (N), which states there was a "yelling and screaming session" that was "public." That paragraph refers to an incident in which "Student Marshall" yelled and screamed at the staff loud enough to be heard in the hallway and beyond, and was not reprimanded for that behavior. Plaintiffs allege that incident set a bad precedent that other students started to follow. (ECF No. 1-1).

Plaintiffs did not allege that Defendants themselves made defamatory statements, nor do they allege the nature of the defamatory statements or the specific injuries caused thereby. Because there are no "well-pleaded facts" that "allow the court to draw the reasonable inference" that Defendants may be liable to Plaintiffs for defamation, Defendants' Motion to Dismiss (ECF No. 18) Plaintiffs' defamation claims is granted as to all Defendants.

4. **Defendants' Motion to Dismiss is granted as to Plaintiff's assault claim against Defendant Bentley.**

Defendants argue that Plaintiffs failed to allege an assault claim against Bentley. ECF No. 18.

Plaintiffs allege in their complaint that "Bentley . . . caused Plaintiffs to be assaulted, intimidated, bullied, and in reasonable fear of imminent harm for their personal safety, the safety of their family members, and the safety of their property and reputation." (ECF No. 1-1). Plaintiffs contend the Petition alleges "numerous facts" that Plaintiff was assaulted by disgruntled students on several occasions. Plaintiff contend Bentley had actual knowledge of the violence and threats of harm to Plaintiffs. Plaintiffs plead the "doctrine of transferred intent," claiming Bentley is personally liable for the actions of third parties because she was aware of those actions.

The doctrine of transferred intent in inapplicable to the circumstances alleged in this case. The common law doctrine of transferred intent is applicable to assault. *See Archie v. Acceptance Indemnity Insurance Co.,* 507 Fed. Appx. 451, 454 (5th Cir. 2013). The doctrine of transferred intent causes the tortfeasor to be liable in for all

direct consequences of the unlawful assault, whether intended or not. *See Brasseaux v. Girouard*, 269 So.2d 590, 603 (La. App. 3d Cir. 1972), writs den., 271 So.2d 262 (La. 1973).

"Awareness" of an assault committed by a third party does not "transfer intent" for an assault from the tortfeasor to Bentley. Without allegations that Bentley was a co-conspirator in the assault, Plaintiffs have not alleged a viable claim of assault against Bentley.

Because Plaintiffs have failed to plead sufficient facts to show they were assaulted by Bentley, Defendants' Motion to Dismiss (ECF No. 18), Plaintiffs' assault claims against Bentley is granted.

> 5. <u>Defendants' Motion to Dismiss is granted as to Plaintiffs' claims of an unsafe work environment/hostile work environment, negligent infliction of emotional distress, and intentional infliction of emotional distress.</u>

Plaintiffs allege a claim for failure to maintain a safe work environment which resulted in workplace violence, bullying, and intimidation of UIU staff by some students. Plaintiffs contend UIU and the individual Defendants failed to adequately monitor the workplace and ignored their complaints concerning the students' cheating and threatening behavior because Plaintiffs are Caucasian and the misbehaving students have all been African-American.

Defendants argue that Plaintiffs' claim against the individual Defendants for an unsafe work environment is barred by the Louisiana Worker's Compensation Act, which provides an employee's exclusive remedy to work-related injuries and precludes civil liability except for injuries resulting from intentional acts. <u>See</u> La.

R.S. 23:1032. Defendants contend that a worker's compensation action may be brought against the employer only. La. R.S. 23:1032(a) states that it, with the exception of intentional torts, Louisiana Workers' Compensation provides the exclusive remedy for an employee who has suffered an injury or compensable sickness or disease. Defendants contend that suits against co-employees are barred by the Louisiana Worker's Compensation Act, except for intentional tort claims. *See Kemp v. CTL Distribution, Inc.*, 440 Fed. Appx. 240, 244 at n. 1 (5th Cir. 2011).

Plaintiffs argue they are alleging an intentional tort for intentional infliction of emotional distress through failure to maintain a safe work environment.[3]

First, it is clear that Plaintiffs have asserted a hostile work environment claim under Title VII. However, Plaintiffs have not alleged a prima facie claim of a hostile work environment.

To prevail on a Title VII claim of hostile work environment, Plaintiffs must prove: (1) they belonged to a protected group; (2) they were subjected to unwelcome harassment; (3) such harassment was based on race; and (4) the harassment complained of affected a term, condition, or privilege of employment. *See Ramsey v. Henderson,* 286 F.3d 264, 268 (5th Cir. 2002); *see also Baker v. FedEx Ground Package System, Inc.,* 278 Fed. Appx. 322, 328 (5th Cir. 2008).

In this case, Plaintiffs are Caucasian. At least three of the individual Defendants are also Caucasian. (See ECF Nos. 1-3, 1-5, 1-6). Plaintiffs do not allege

---

[3] Intentional torts are not barred by the Louisiana Worker's Compensation Act. *See* La. R.S. 23:1032(B); *Maggio v. St. Francis Medical Center, Inc.,* 391 So.2d 948, 950 (La. App. 2d. Cir. 1980), writ den.*,* 396 So.2d 1351 (La. 1981).

that Defendants did anything adverse to them because they are Caucasian. Instead, Plaintiff allege Defendants protected the allegedly misbehaving students from the consequences of their bad behavior because they were African-American. Plaintiffs have not alleged a hostile work environment due to racially discriminatory acts. Therefore, Defendants' Motion to Dismiss Plaintiffs claim of a hostile work environment (unsafe work environment) should be granted.

Plaintiffs also assert a claim of negligent infliction of emotional distress. Defendants again contend such a claim is barred by the Louisiana Worker's Compensation Act.

Louisiana does not recognize an independent tort of negligent infliction of emotional distress. *See Touchard v. Slemco Elec. Found.*, 1999-3577 (La. 10/17/00); 769 So. 2d 1200, 1205; *Moresi v. State through Dept. of Wildlife and Fisheries,* 567 So. 2d 1081, 1096 (La. 1990). *Moresi* created an exception to the general rule that a defendant is generally not liable for negligent acts which cause only mental disturbances. *See Touchard*, 769 So. 2d at 125 (citing *Moresi*, 567 So. 2d at 1096). Under *Moresi,* a plaintiff may recover for mental injuries only when the situation creates the "especial likelihood of genuine and serious distress, arising from special circumstances, which serves as a guarantee that the claim is not spurious." *See Touchard*, 769 So. 2d at 125 (citing *Moresi*, 567 So. 2d at 1096. A plaintiff may recover for unintentional or negligent infliction of emotional distress unaccompanied by physical injury where the defendant's negligent conduct is deemed to be outrageous. *See Lester v. Secretary of Veterans Affairs*, 514 F. Supp. 2d 866, 881 (W.D. La. 2007).

Plaintiffs allege only that Defendants ignored their complaints of abuse from students and permitted the students to create an atmosphere of fear and intimidation in the workplace. Plaintiff contend Defendants failed to heed their warnings and complaints of a dangerous work environment, in which, allegedly, a group of ill-behaved African-American students bullied, threatened, and intimidated their professors (some of whom were also African-American) in order to pass their classes. Miller and Picard allege Defendants permitted the bullying behavior to continue.

Plaintiffs have not alleged any facts from which the Court may infer Defendants engaged in outrageous and negligent conduct that caused Plaintiffs emotional distress. Therefore, Defendants' Motion to Dismiss (ECF No. 18) should be granted as to all Defendants on Plaintiffs' claims of negligent infliction of emotions distress.

Plaintiffs also allege Defendants are liable to them for intentional infliction of emotional distress. Louisiana law provides that:

> in order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

*See Baker v. FedEx Ground Package Sys. Inc.*, 278 Fed. Appx. 322, 329 (5th Cir. 2008) (citing *White v. Monsanto Co.,* 585 So.2d 1205, 1209 (La. 1991)); see also *Givs v. City of Eunice*, 512 F. Supp. 2d 522, 547 (W.D. La. 2007).

Again, Plaintiffs' allegations to not describe "extreme and outrageous" conduct by Defendants. Instead, they allege such conduct by UIU students. The fact that

Defendants have been ineffective in addressing staff concerns regarding student cheating and other misbehaviors, although worthy of concern, is not "extreme and outrageous" behavior that supports a claim of intentional infliction of emotion distress.

Therefore, Defendants' Motion to Dismiss Plaintiffs' claim for intentional infliction of emotional distress is granted as to all Defendants.

### 6.    Defendants' Motion to Dismiss Plaintiffs' invasion of privacy claims is granted.

Defendants contend Plaintiffs failed to state a claim for invasion of privacy.

In their Petition, Plaintiffs alleged that Defendants allowed their "employee files and personnel information to be located in a public domain" and "exposed to disgruntled students, their family members, and to unknown other third parties," which  invaded Plaintiffs' private lives and caused "fear and worry about acts of wrongful conduct and crimes that may likely occur in the future."  (ECF No. 1-1).

The tort of invasion of privacy is directed at redressing the damage which an individual suffers when legally recognized elements of his right to privacy have been violated. *See Tate v. Woman's Hospital Foundation*, 2010-0425 (La. 1/19/11), 56 So.3d 194, 197 (citing *Gorman v. Swaggart,* 524 So.2d 915, 920 (La. App. 4 Cir. 1988)).  The right to privacy is defined in Louisiana as "the right to be let alone." *See Tate*, 56 So.3d at 197 (citing *Pack v. Wise,* 155 So.2d 909, 913 (La. App. 3rd Cir. 1963), writ den., 245 La. 84, 157 So.2d 231 (1963)).  A tort of invasion of privacy can occur in four ways: (1) by appropriating an individual's name or likeness; (2) by unreasonably intruding on physical solitude or seclusion; (3) by giving publicity which unreasonably

places a person in a false light before the public; and (4) by unreasonable public disclosure of embarrassing private facts. *See Tate*, 56 So.3d at 197 (citing *Jaubert v. Crowley Post–Signal, Inc.,* 375 So.2d 1386 (La. 1979)); *see also Hewitt v. 3G Energy Services, L.L.C.*, 2019 WL 2402963, at *1 (W.D. La. 2019).

Plaintiffs have not claimed they have been placed in a false light, nor have they claimed there has been an "unreasonable public disclosure of embarrassing private facts." Plaintiffs only contend Defendants failed to maintain their online employee files in a secure manner, which left their private information open to public viewing. Because Plaintiffs have failed to state a claim for violation of privacy, Defendants' Motion to Dismiss (ECF No. 18) Plaintiffs' claim for invasion of privacy is granted as to all Defendants.

### B.    Defendants' Motion to Dismiss the whistleblower claims against UIU (ECF No. 27) is denied.

Defendants contend Plaintiffs' whistleblower claims against UIU should be dismissed because UIU does not meet the statutory definition of "employer" under La. R.S. 23:967 and La. R.S. 23:302, as a nonprofit corporation and a private educational institution, citing *Jackson v. Xavier University of Louisiana*, 2002 WL 1482756, at *6 (E.D. La. 2002).[4]

The Louisiana Whistleblower Statute provides protection to employees against reprisal from employers for reporting or refusing to participate in illegal work practices. *See Hale v. Touro Infirmary,* 2004–0003 (La. App. 4th Cir.11/3/04), 886

---

[4] Although Plaintiffs did not cite the Louisiana Whistleblower Statute, La. R.S. 23:967, in their petition, they argue in their briefs that it is applicable to their case (ECF Nos. 36, 38).

So.2d 1210, 1214, writ den., 2005–0103 (La.3/24/05), 896 So.2d 1036; *Accardo v. Louisiana Health Servs. & Indemnity Co.*, 2005-2377 (La. App. 1 Cir. 6/21/06, 3), 943 So.2d 381, 383. The statute states:

> An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
>> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
>> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

La. R.S. § 23:967(A); *see Wilson v. Tregre*, 787 F.3d 322, 326 (5th Cir. 2015).

To establish a retaliation claim, a plaintiff must demonstrate that the defendant was his "employer," as only employers are liable under the Louisiana Whistleblower Statute. *See* La. R.S. 23:967(A)(1). La. R.S. 23:967 does not define the term "employer." There is a split among the Louisiana Circuit Courts of Appeal as to whether the definition of "employer" in the LEDL is applicable to the Louisiana Whistleblower Statute. The LEDL defines an "employer" as an entity "receiving services from an employee and, in return, giving compensation of any kind to an employee." La. R.S. § 23:302(2). The LEDL exempts from liability "employers" who are private educational or religious institutions, or any nonprofit corporation. *See* La. R.S. § 23:302(2)(b).

Some courts have declined to the LEDL definition of "employer" and the § 302(b)(2) exemption to claims against employers arising out of the Louisiana Whistleblower Act. *See Hunter v. Rapides Parish Coliseum Authority*, 2014784 (La.

App. 3d Cir. 2/4/15), 158 So.3d 173, 177-78, writ den., 2015-C-0737 (La. 6/1/15), 171 So. 3d 934; *Knighten v. State Fair of La.,* 2006 WL 725678, at *7 (W.D. La. 6/1/06), 171 So.3d 934 (declining "to extend La. R.S. 23:302's definition of 'employer' to the Louisiana Whistleblower s, 2018 WL 929604, at *2 (E.D. La. 2018) (holding without analysis that "statute, La. R.S. 23:967"); *but see Hanna v. Shell Exploration and Production, Inc.*, 2017-0293 (La. App. 4th Cir. 12/6/17), 234 So.3d 179, 189 at n. 8 (declining, without analysis, to follow *Hunter*).  But other federal courts have adopted the definition of "employer" from the LEDL.  *See Sebble v. NAMI New Orleans, Inc,* 2018 WL 929604, at *2 (E.D. La. 2018) (holding, without analysis, that "[although the statute itself does not define 'employer' as set forth in La. R.S. 23:302, Louisiana's general employment discrimination statute");[5] *Jackson v. Xavier University of Louisiana*, 2002 WL 1482756, at *6 (E.D. La. 2002) (applying, without analysis of applicability, § 302 definition of employer and exemption from liability for a non-profit and private educational institution to a whistleblower claim); *Langley v. Pinkerton's Inc.,* 220 F. Supp. 2d 575, 580 (M.D. La. 2002) (approving *Jackson*'s holding in dicta).[6]  In *Sanders v. Christwood*, 2019 WL 2617179, at *6 (E.D. La. 2019),

---

[5] Defendants specifically rely on *Jackson, Sebble*, and *Shelton v. Board of Supervisors of Southern University Agricultural and Mechanical College*, 2011 WL 4344566, at *7-*8 (M.D. La. 2011).  However, in *Shelton*, the court noted the legal issue and conflicting case law with respect to application of La. R.S. 23:302(2) to the whistleblower statute, found the issue was not currently before it, and declined to rule on it.  Therefore, that case is inapplicable.

[6] *But see Upshaw v. Board of Supervisors of Southern University and Agricultural College*, 2011 WL 2970950, at *4 (M.D. La. 2011) (following <u>Knighten</u> and holding the LEDL exemption from liability, § 302(2)(b), is inapplicable to claims arising out of the Louisiana Whistleblower Statute).

In *Guy v. Boys & Girls Club of Southeast Louisiana, Inc.*, 2005 WL 517503, at *4 (E.D. La. 2005), the court likewise declined to apply the non-profit exclusion from the LEDL to a

appeal filed, 10-30550 (5th Cir.), the district court cited *Jackson, Sebble,* and *Langley*,[7] and held defendant, a non-profit corporation, was an exempt employer under the whistleblower statute. An appeal on that issue (and others) is pending before the Fifth Circuit.

Courts in this district have declined to apply the LEDL definition of "employer," as well as the LEDL's exemption from liability, to claims arising out of the Louisiana Whistleblower Statute. In *Knighten, Terry*, and *Norris*, federal courts in this district declined to extend the § 302(2)(b) exemption to whistleblower claims against non-profit organizations. In *Knighten*, 2006 WL 725678, at *7, the Magistrate Judge reasoned:

> [T]he undersigned notes that the majority of the cases cited by Defendant are unpublished opinions with no precedential value. *See Jackson v. Xavier University of Louisiana,* 2002 WL 1482756 (E.D. La. 2002); *Jones v. J.C.C. Holding Co.,* 2001 WL 537001 (E.D. La. 2001); *Dronet v. Lafarge Corp.,* 2000 WL 1720547 (E.D. La. 2000). The *Langley* case was a published case from the Middle District of Louisiana; however, the pertinent language is quoted from the previously cited unpublished decisions with no further analysis.
>
> The word "Chapter" is included in both sections of La. R.S. 23:302 at issue. The statute clearly states, "The provisions of this *Chapter ....*

whistleblower claim. Instead, the court applied the Louisiana jurisprudential control test of *Ray v. City of Bossier*, 37,708 (La. App. 2d Cir. 10/24/03), 859 So.2d 264, writs den., 2003-C-3254 & 2003-C-3214 (La. 2/13/04), 867 So.2d 697, to find the Boys & Girls Club was an employer that was not entitled to benefit from the exclusionary language found in La. R.S. 23:302(2).

Therefore, both the Eastern and Middle Districts of Louisiana have deviated from the line of cases cited by Defendant.

[7] The district court in *Sanders* also incorrectly cited *Johnson v. Hospital Corp. of America*, 767 F. Supp. 2d 678, 686 (W.D. La. 2011), for the proposition that the LEDL defines "employer for purposes of the whistleblower statute. However, in *Johnson*, the district court dismissed the whistle blower claims as prescribed, and discussed the definition of "employer in the context of Title VII employment discrimination, not whistleblower claims.

[and] This *Chapter* shall not apply.... La. R.S. 23:302. The undersigned recommends that this Court again decline to adopt the definition of "employer" in La. R .S. 23:302, which is located in Chapter 3-A and apply it to La. R.S. 23:967, which is found in Chapter 9. If the legislature intended for the definition found in Chapter 3-A to apply to all of Title 23, it could have drafted a definitions section applicable to it in its entirety. If it intended for Chapter 3-A's definition to apply to Chapter 9, it could have easily reproduced the definition within Chapter 9 or easily stated as such. In the absence of these actions, the undersigned recommends that the term "employer" be used in its ordinary sense, that the exception for nonprofit corporations be held inapplicable to the claims at issue in this lawsuit . . . .

Adopting the Magistrate Judge's reasoning, the district court held:

This Court finds that the Magistrate Judge's decision not to extend section 302's definition of "employer" to section 967 was correct. This Court declines to follow Defendant's reasoning and refuses to extend the definition of an employer in section 302 to section 967 when there is nothing more to support such an expansion than a nonbinding, published federal district court opinion, two unpublished federal district court opinions, and a single Louisiana appellate court ruling that is, in turn, based on those unpublished federal district court opinions. Further, Section 302 is included in Chapter 3-A-Prohibited Discrimination in Employment. Section 967 is included in Chapter 9-Miscellaneous Provisions, Part III, Employee Protection from Reprisal; Prohibited Practices; Remedies. There is simply no linking language between the two sections; in fact, the language in section 302 evinces that its provisions apply to "this chapter" only. If the Louisiana Legislature wished to carve out a nonprofit corporation exception for section 967, it could have easily done so with precise, narrowing language. Moreover, if the Louisiana Legislature intended for section 302's definition of an employer to be an overriding definition applicable to all statutes contained in Title 23, it could have easily eliminated the "this chapter" language in section 302. Rather than clear guidance from the Louisiana Legislature or binding precedent from the United States Court of Appeals, Fifth Circuit or the Louisiana Supreme Court, this Court is left with section 967's reference to "employer," a broad term with no hint of any exception. Thus, this Court declines to extend La. R.S. 23:302's definition of "employer" to the Louisiana Whistleblower Statute, La. R.S. 23:967.

*Knighton*, 2006 WL 725678, at *1; s*ee also Hunter v. Rapides Parish Coliseum*

*Authority*, 2014784 (La. App. 3d Cir. 2/4/15), 158 So.3d 173, 177-78, writ den., 2015-

C-0737 (La. 6/1/15), 171 So. 3d 934 (following the reasoning in *Knighten*); *Terry v. Acadiana Concern for AIDS Relief Education and Support, Inc.*, 2019 WL 2353226, at *10 (W.D. La. 2019), report and recommendation adopted in part, 2019 WL 2353176 (W.D. La. 2019)[8] (following the reasoning in *Knighten* and *Hunter*); *Norris v. Acadiana Concern for Aids Relief Education and Support*, 2019 WL 4805847, at *3-*4 (W.D. La. 2019) (following the reasoning in *Knighten, Hunter*, and *Terry*).

In <u>Norris</u>, the district court stated:

> The cases that have incorporated the LEDL's carve-out for non-profit organizations into the Whistleblower Statute do not consider the statutory text of either act and the context of the carve-outs but instead merely relied on *Johnson, Dronet,* and other cases that looked solely to the definitional clause in La. R.S. 23:302(2) . *See, e.g., Sebble v. NAMI New Orleans*, 2018 WL 929604 (E.D. La. 2018); *Jackson v. Xavier University of Louisiana*, 2002 WL 1482756 (E.D. La. 2002). These decisions do not include an independent textual analysis of the LEDL's carve-out provisions. Accordingly, these cases are not persuasive on the question of whether the Whistleblower Statute applies to non-profit organizations.

*Norris*, 2019 WL 4805847, at *4.

The clear precedent in this district is to not follow the LEDL definition of employer with respect to whistleblower clams, and to not apply the LEDL exemption for non-profit corporations and private educational institutions to whistleblower claims. Therefore, Defendants' Motion to Partially Dismiss Whistleblower Claims Against UIU (ECF No. 27) is denied.

---

[8] Appeals were filed but dismissed by the Fifth Circuit as premature.

## III. Conclusion

Because Plaintiffs have failed to state claims, Defendants' Motion to Partially Dismiss (ECF No. 18) is GRANTED as follows:

(1) Plaintiffs' claims for discrimination, retaliation, whistleblowing, and breach of contract against Bentley, Adams, Franken and Duffy be DISMISSED WITH PREJUDICE;

(2) Plaintiffs' claims for unjust enrichment against UIU be DISMISSED WITH PREJUDICE;

(3) Plaintiffs' defamation claims against all Defendants be DISMISSED WITHOUT PREJUDICE;

(4) Plaintiffs' assault claims against Bentley be DISMISSED WITHOUT PREJUDICE;

(5) Plaintiffs' claims for an unsafe work environment/hostile work environment, negligent infliction of emotional distress, and intentional infliction of emotional distress against all Defendants should be DISMISSED WITHOUT PREJUDICE.

(6) Plaintiffs' claim for invasion of privacy against all Defendants be DISMISSED WITHOUT PREJUDICE;

Because the LEDL exemption for certain employers does not apply to Plaintiffs' whistleblower claims, Defendants' Motion to Dismiss Whistleblower Claims Against UIU (ECF No. 27) is DENIED.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this ___21st___ day of February 2020.

Joseph H.L. Perez-Montes
United States Magistrate Judge