b

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

| | |
|---|---|
| JANICE MILLER, ET AL., **Plaintiffs** | CIVIL DOCKET NO. 1:19-CV-00039 |
| **VERSUS** | |
| UPPER IOWA UNIVERSITY, ET AL., **Defendants** | MAGISTRATE JUDGE PEREZ-MONTES |

---

## <u>MEMORANDUM RULING</u>

Before the Court is a Motion for Summary Judgment filed by Defendant Upper Iowa University ("UIU"), seeking dismissal of the remaining claims of Plaintiff Laura Picard ("Picard"). ECF No. 82. Defendant UIU also filed a Motion to Strike portions of Picard's Statement of Material Facts. ECF No. 102.

UIU's Motion for Summary Judgment (ECF No. 82) is GRANTED IN PART as to Picard's: (1) gender discrimination claim due to lack of exhaustion; (2) ADEA claim due to lack of evidence; (3) punitive damages claim; and (4) constructive discharge claim. Because there are genuine issues of material fact, UIU's Motion for Summary Judgment (ECF No. 82) is DENIED IN PART as to Picard's racial discrimination claim and retaliation claim. UIU's Motion to Strike Picard's Statement of Material Facts (ECF No. 102) is DENIED.

I.   <u>Background</u>

Plaintiff Picard and a co-plaintiff (now dismissed[1]) filed a complaint against UIU and individual Defendants, in state court, for violations of Title VII of the Civil Rights Act of 1964 (P.L. 88-352, 78 Stat. 241 (1964), 42 U.S.C. § 2000e-2); the Age Discrimination in Employment Act of 1967 (P.L. 90-202, 81 Stat. 602 (1967), 29 U.S.C. § 623); the Louisiana Whistleblower Statute (La. R.S. 23:967); and other supplemental state law claims.   ECF Nos. 1-1, 9.   Picard was an adjunct professor working at the Alexandria, Louisiana campus of UIU.   Defendants removed and alleged federal question jurisdiction under Title VII and supplemental jurisdiction.

UIU is a private university.   The named individual Defendants, Bentley, Adams, Franken, and Duffy, are all employees or contract agents of UIU.   Bentley is the South Central Regional Director of UIU (ECF No. 1-4); Adams was the Director of Human Resources for UIU (ECF Nos. 1-3); Duffy is the President of UIU (ECF No. 1-5); and Franken is the Vice-President of Enrollment for Enrollment Management for UIU (ECF No. 1-6).

Picard alleges that, from 2016 through 2018, students, faculty, and staff at the UIU Alexandria campus were "bullied and intimidated by other students with a pervasive atmosphere of racial discrimination, intimidation, harassment, and violence in the workplace." (ECF No. 9-1).   Picard contends the bullies were a group

---

[1] Co-plaintiff Miller and UIU reached a settlement, and Miller's case was dismissed.   ECF Nos. 82-3 at 1; 98-4 at 1; 112; 113. .

of African-American students who were hostile and threatening toward both African-American and Caucasian faculty.  (ECF No. 9-1).  Picard further alleges that, when they brought the problem to the attention of UIU and the individual Defendants, they were ignored, retaliated against, then constructively terminated.  (ECF No. 1-1).

Defendants answered (ECF No. 17).  Defendants filed a Motion to Partially Dismiss (ECF No. 18), which was granted in part, and a Motion to Dismiss Whistleblower Claims (ECF No. 27), which was denied.  All of Picard's claims against Bentley, Adams, Franken, and Duffy were dismissed.  ECF Nos. 59, 60.  Some of Picard's claims against UIU were also dismissed–unjust enrichment, defamation, unsafe work environment/hostile work environment, negligent infliction of emotional distress, intentional infliction of emotional distress, and invasion of privacy.  ECF Nos. 59, 60.

Picard's remaining claims against UIU are for: discrimination; retaliation; failure to maintain whistle-blowing policies; whistle-blowing retaliation; and breach of contract.  ECF No. 1 at 9; No. 9-1.  Picard seeks: injunctive relief; back pay; special, punitive and general damages; attorney's fees; and costs.  (ECF No. 1-1).

UIU filed a Motion for Summary Judgment to dismiss Picard's remaining claims.  ECF No. 82.  UIU also filed a Motion to Strike.  ECF No. 102.  Picard opposes those motions.

## II.   Law and Analysis

### A.   The individual defendants should be terminated on the docket.

All of Picard's claims against the individual Defendants–Bentley, Adams, Franken, and Duffy–have been dismissed.  Accordingly, Bentley, Adams, Franken, and Duffy are no longer parties to this action.  ECF No. 60.

The Clerk of Court is directed to terminate Bentley, Adams, Franken, and Duffy on the docket.

### B.   UIU's Motion to Strike is denied.

UIU filed a Motion to Strike parts of Picard's Statement of Material Facts.[2] ECF No. 102.  UIU contends portion of Picard's Statement of Material Fact are law or argument rather than fact, and should be stricken.

A Motion to Strike is governed by Rule 12(f), to strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  UIU has not identified any part of Picard's Statement of Material Facts that fits within one of those categories.  UIU contends only that portions of her Statement of Material Facts are "non-factual."

Under Rule 56(c)(2), it is not necessary for a party to file a motion to strike in a motion for summary judgment.  Instead, the party may simply object to the

---

[2] Local Rule 56.2, Opposition to Summary Judgment:
> Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried.  All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.

material. *See* Fed. R. Civ. P. 56 advisory committee's note to 2010 amendments ("There is no need to make a separate motion to strike.").[3]

UIU's Motion to Strike (ECF No. 102) is treated as an objection, and is DENIED AS MOOT.

## C.   UIU's Motion for Summary Judgment is granted in part and denied in part.

UIU argues that Picard: (1) did not exhaust her administrative remedies for her age and gender discrimination claims; (2) cannot show but-for causation on her age discrimination claim; (3) lacks direct evidence to support her claims of age, race, and gender discrimination and of retaliation; (4) cannot prove discrimination based on disparate treatment, pretext, or incredibility; (5) cannot establish retaliation by the individual Defendants; (6) is precluded from claiming punitive damages; (7) has

---

[3] *See also Cutting Underwater Technologies USA, Inc. v. Eni U.S. Operating Co.,* 671 F.3d 512, 515 (5th Cir. 2012); *see also Green v. United Parcel Service, Incorporated,* 2021 WL 935431, at 209, n. 3 (5th Cir. 2021); *Combs v. Exxon Mobil Corporation,* 2020 WL 5121362, at *3, n. 1 (M.D. La. 2020), aff'd, 2021 WL 1537452 (5th Cir. 2021) ("longstanding federal practice" "disfavors motions to strike submitted at summary judgment," recommending instead "objections to evidence offered in support of or in opposition to motions for summary judgment in conjunction with the actual motion for summary judgment"); *Hardison v. Skinner,* 489 F. Supp. 3d 536, 542 (W.D. La. 2020), *appeal filed,* Doc. No. 20-30643 (5th Cir. 10/16/20); *Palacios v. Cupples*, 2019 WL 1965855, at *1 (W.D. La. 2019) (under Rule 56(c)(2), "there is no need . . . to file a separate motion to strike;" "[n]evertheless, a court may . . . treat the motion to strike as an objection"); *Trinity Medical Services, L.L.C. v. Merge Healthcare Solutions, Inc.*, 2020 WL 97162 at *1 (M.D. La. 2020) (denying Defendant's Motion to Strike Plaintiff's Statement of Material Facts, noting its objections and stating, "In ruling on summary judgment, the Court does not consider arguments and legal conclusions couched as facts."); *Wagner v. Hurst,* 2019 WL 2213915, at *3 (W.D. La. 2019); *Kansas City Southern Railway Co. v. Precision Land Leveling,* 2016 WL 660119, at *2 (W.D. La. 2016), *aff'd,* 751 Fed. Appx. 404 (5th Cir. 2018).

a baseless constructive discharge claims; and (8) lacks sufficient evidence to support her whistle-blower claim.

>   1.   **Standards governing the Motion for Summary Judgment generally.**

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.[4]

"A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *See Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In deciding a motion for summary judgment, a court must construe all facts and draw all inferences in the light most favorable to

---

[4] Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted unless the opposing party controverts those facts.

the non-movant.  *See Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).  However, a mere scintilla of evidence is insufficient to defeat a motion for summary judgment.  *See  Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999).

Title VII makes it unlawful "for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 513 (1993).  In a Title VII claim, the plaintiff must establish a prima facie case that the defendant made an employment decision motivated by a protected factor.  *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1089 (5th Cir. 1995).  The defendant bears the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason.  *See Mayberry*, 55 F.3d at 1089.  The burden then shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for discrimination.  *See Mayberry*, 55 F.3d at 1089.

The district court must decide which party's explanation of the employer's motivation it believes.  *See St. Mary's Honor Center*, 509 U.S. at 511.  It is not enough to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.  *See id.*

7

2.    <u>Picard failed to exhaust her gender discrimination claim, but exhausted her race and age discrimination claims.</u>

UIU argues that Picard failed to exhaust her administrative remedies as to her claims of gender and age discrimination.  ECF No. 82 at 11.  Picard contends that her claims of gender and age discrimination are related to and "grow out of" her EEOC complaint of discrimination for race and retaliation.  ECF No 98 at 2.

Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court.  Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory "notice of right-to-sue."  *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002), cert. den., 537 U.S. 1200 (2003).  "Failure to exhaust administrative remedies is not a procedural 'gotcha' issue," but a "mainstay of proper enforcement of Title VII remedies."  *See McClain v. Lufkin Industries, Inc.*, 519 F.3d 264, 272 (5th Cir. 2008), cert. den., 555 U.S. 881 (2008).  "The charge enables the EEOC to investigate and, if appropriate, negotiate a resolution with an employer."  *See id at 273.*  Only after administrative remedies are exhausted may an employee file suit against his employer.  *See id.*; 42 U.S.C. § 2000e–5(b).  "A Title VII plaintiff's failure to exhaust her administrative remedies is not a jurisdictional bar but rather a prudential prerequisite to suit."  *Davis v. Fort Bend County*, 893 F.3d 300, 305 (5th Cir. 2018), aff'd, 139 S. Ct. 1843 (U.S. 2019) (citing *Young v. City of Houston*, 906 F.2d 177, 180 (5th Cir. 1990); *Womble v. Bhangu*, 864 F.2d 1212, 1213 (5th Cir. 1989)).

The scope of an EEOC charge should be liberally construed for litigation purposes because Title VII "was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship." *See McClain*, 519 F.3d at 273 (quoting *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 465 (5th Cir. 1970)).  The "primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in [an] attempt to achieve non-judicial resolution of employment discrimination claims." *See McClain*, 519 F.3d at 273 (quoting *Pacheco v. Mineta,* 448 F.3d 783, 788–89 (5th Cir. 2006), cert. den., 549 U.S. 888 (2006)).

To reconcile these policies, the United States Fifth Circuit Court of Appeals construes an EEOC complaint broadly, but in terms of the administrative EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination." *See McClain*, 519 F.3d at 273 (quoting *Sanchez,* 431 F.2d at 466). The Fifth Circuit uses a "fact-intensive analysis" of the administrative charge that looks beyond the four corners of the document to its substance. *See id.*  In sum, a Title VII lawsuit may include allegations "like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission." *Id.*

Picard filed an EEOC discrimination charge on April 1, 2018.  ECF No. 1-2 at 7; No. 82-4; No. 98-1; No. 98-9 at 1.  In her complaint, she checked the boxes for

9

discrimination based on race and retaliation.[5]   ECF No. 82-4; No. 98-1.   In the "Particulars" section, Picard stated that she was discriminated against due to her race (Caucasian) and retaliated against after reporting to supervisor Cynthia Bentley that she was being harassed by students.   Picard also stated that her classes were taken from her and given to Black teachers.   ECF No. 82-4; No. 98-1; No. 98-9 at 1. More specifically, a January 2, 2018 letter to the EEOC from Picard, Miller, and Ashley Nelson (attached to the complaint form)[6] states they "are hereby lodging EEOC complaints" against UIU.   ECF No. 82-4; No. 98-9 at 11.   In that letter, Picard notified the EEOC that she was removed from the schedule in retaliation for failing a few students for plagiarism, and due to her age and race.   ECF No. 82-4; No. 98-9 at 11.[7]

The EEOC did not consider Picard's complaint, instead issuing a "Notice of Right to Sue" on September 27, 2018 because it determined that it was "unlikely that the EEOC [would] be able to complete its administrative processing within 180 days from the filing" of the complaint.   ECF No. 1-2 at 6.

---

[5] Picard testified in her deposition that the EEOC investigator actually filled in the EEOC charge and Picard digitally signed it.   ECF No. 94 at 60.

[6] Nelson filed a separate suit against UIU.

[7] Picard also stated that she is of Hispanic ancestry but looks Caucasian.   ECF No. 82-4; No. 98-9 at 11.   In her statement of material facts, Picard states that she is Caucasian.   ECF No. 98-13 at VII.   Picard's EEOC complaint form indicates that she is Caucasian.   ECF No. 1-2 at 7.

10

UIU argues that Picard failed to allege age and gender discrimination in either her EEOC complaint form or in the letter to the EEOC attached to the complaint form.

Picard did not allege gender discrimination on her EEOC complaint form or in the attached letter to the EEOC.  Nor did Picard allege any facts, in her EEOC complaint and letter, to support a claim of gender discrimination.  Because a gender discrimination claim could not reasonably have been expected to grow out of Picard's EEOC charge, Picard did not exhaust the gender discrimination claim.[8]

Picard also did not allege age discrimination in the EEOC complaint, but clearly contends Defendants discriminated against her on the basis of her age in her letter to the EEOC.  Because age discrimination is a claim that could reasonably have been expected to grow out of Picard's EEOC charge, it is exhausted.

Accordingly, UIU's Motion for Summary Judgment (ECF No. 82) for lack of exhaustion is GRANTED IN PART as to Picard's gender discrimination claim and DENIED IN PART as to Picard's age discrimination claim.

### 3.   There are no genuine issues of material fact as to whether Picard was discriminated against due to age.

Next, UIU contends Picard cannot show but-for causation on her age discrimination claim, citing *Gross v. FBL Financial Services*, 557 U.S. 167, 165 (2009).

---

[8] It is noted that Picard contends she was replaced by two male and three female adjunct professors.  ECF. No. 99.

11

Picard alleges UIU failed to re-employ her to teach the classes she customarily taught because of her age.  Picard contends she is an "older" Caucasian female.

"The discrimination prohibited by the ADEA is discrimination 'because of [an] individual's age,' 29 U.S.C. § 623(a)(1),[9] though the prohibition is 'limited to individuals who are at least 40 years of age,' § 631(a)."  *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996).  This language does not ban discrimination against employees because they are aged 40 or older.  It bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older.  *See O'Connor*, 517 U.S. at 312.  The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out *because of his age.  See O'Connor*, 517 U.S. at 312.

The ordinary meaning of the ADEA's requirement that an employer took adverse action "because of" age is that age was the "reason" that the employer decided

---

[9] 29 U.S.C. § 623(a):
    (a) Employer practices
    It shall be unlawful for an employer--
        **(1)** to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
        **(2)** to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
        **(3)** to reduce the wage rate of any employee in order to comply with this chapter.

12

to act.  *See Gross,* 557 U.S. at 176 (citing *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610 (1993)); *see also University of Texas Southwestern Medical Center v. Nassar,* 570 U.S. 338, 350 (U.S. 2013).  Thus, "[t]o establish a disparate-treatment claim under the plain language of the ADEA ... a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."  *See Rogers v. Bromac Title Services, L.L.C.,* 755 F.3d 347, 351 (5th Cir. 2014) (quoting *Gross,* 557 U.S. at 176).  "[T]he prima facie case requires '*evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion . . . .*'"[10]  *See O'Connor,* 517 U.S. at 312 (*quoting International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358 (1977)).

In her statement of material facts, Picard alleges only that her classes and her senior projects were given to "younger African Americans."  UIU has shown Picard's age was 51 in 2017-2018, so she is in the protected class.  UIU also provided the ages of all but one of the teachers who she alleges replaced her: Ms. Calbert was 51 years old in 2017-18; Ms. Graham was 56 years old in 2017-18, Mr. Ivory was 47 years old in 2017-18, and Ms. Manuel was 47 years old in 2017-18.  Mr. Hebert's age is not provided.

Calbert, Graham, Ivory, and Manuel are all in the protected "over 40" class with Picard.  However, because the ADEA prohibits discrimination on the basis of

---

[10] In the age-discrimination context, such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger.  *See O'Connor,* 517 U.S. at 313.

age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class. *See O'Connor*, 517 U.S. at 313.

Two of the replacement teachers were younger than Picard by 4 years.  One was the same age, and one was 5 years older than Picard.  The age differences are too slight to create an inference that Picard was not re-employed because she is "older."

"Summary judgment is proper when, viewed in the light most favorable to the non-moving party, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Skyline Air Service, Inc. v. G.L. Capps Co.*, 916 F.2d 977, 978 (5th Cir. 1990) (citing S*mith v. Xerox Corporation,* 866 F.2d 135, 137 (5th Cir.1989); *Bynum v. F.M.C. Corp.,* 770 F.2d 556, 576 (5th Cir.1985); Fed. R. Civ. P. 56(c)).  If the movant meets its burden by demonstrating the absence of a genuine issue of material fact, then the burden shifts to the opposing "party to demonstrate through affidavits or other competent evidence that a genuine issue of material fact exists for trial." *See Skyline Air Service, Inc.*, 916 F.2d at 978 (citing *Smith*, 866 F.2d at 137).  "Mere allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are not enough."  *Id.* (quoting *Bynum,* 770 F.2d at 576).  Picard alleges, but has not shown, that "but for" her age she would have been re-employed to teach her customary law and business classes at UIU.

14

Because Picard has not established causation for her ADEA claim, UIU's Motion for Summary Judgment is granted as to Picard's ADEA claim.  Picard's ADEA claim is dismissed with prejudice.

### 4. <u>There are genuine issues of material fact as to whether Picard was discriminated against due to her race.</u>

UIU contends that Picard's claim that UIU did not re-employ her due to her race (Caucasian-Hispanic) should be dismissed.

Title VII makes it unlawful "for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 513 (1993).  In a Title VII claim, the plaintiff must establish a prima facie case that the defendant made an employment decision motivated by a protected factor.  *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1089 (5th Cir. 1995).

If the plaintiff lacks direct evidence of discrimination, a court must apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Watkins v. Tregre*, 997 F.3d 275,  (5th Cir. 2021) (citing *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020)).  Under that framework, the plaintiff must first make a *prima facie* case of race discrimination.  Then the burden of production shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its actions.  *See Watkins,* 2021 WL 1826269, at 281 (citing *Outley v. Luke &*

*Associates, Inc.*, 840 F.3d 212, 216 (5th Cir. 2016)). If the defendant does that, "the presumption of discrimination disappears," and the plaintiff "must . . . produce substantial evidence indicating that the proffered legitimate[,] nondiscriminatory reason is a pretext for discrimination." *Id.*

To make a *prima facie* case of race discrimination, Picard must show that: (1) she belongs to a protected group; (2) she was qualified for her position as adjunct professor; (3) she suffered an adverse employment action; and (4) a similarly situated employee outside of her protected group was treated more favorably. *See Watkins*, 2021 WL 1826269, at *3 (citing *Nasti v. CIBA Specialty Chemicals Corp.*, 492 F.3d 589, 593 (5th Cir. 2007)).

If the plaintiff makes a *prima facie* case of racial discrimination, the defendant bears the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason. *See Mayberry*, 55 F.3d at 1089. The burden then shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for discrimination. *See Mayberry*, 55 F.3d at 1089. If the defendant offers a legitimate nondiscriminatory reason for its action the presumption of discrimination derived from the plaintiff's *prima facie* case "simply drops out of the picture," and "the ultimate question is discrimination *vel non.*" *See Mayberry*, 55 F.3d at 1090.

The district court must decide which party's explanation of the employer's motivation it believes. *See St. Mary's Honor Center*, 509 U.S. at 511. It is not enough

16

to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination. *See id.*

### a.   Picard is a member of a protected group and was qualified for a teaching position.

Picard contends she is Caucasian (Hispanic).  Picard has shown she was qualified for her position as adjunct professor: she has a B.S. in business, an MBA, and a law degree.  ECF No. 94 at 2.  Moreover, Picard had regularly taught as an adjunct professor at UIU since 2008, customarily teaching law or business classes. ECF No. 99, No. I.  UIU does not dispute that Picard was not qualified for a teaching position.

### b.   Picard alleges an adverse employment action due to racial discrimination.

Next, Picard must allege that she suffered an adverse employment action because of racial discrimination. *See Stone*, 590 Fed. Appx. at 339 (citing *Raj v. Louisiana State University,* 714 F.3d 322, 331 (5th Cir. 2013)).  An adverse employment action is one that affects employment or alters the conditions or the workplace, and typically involves discrete changes in the terms of employment, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant changes in benefits. *See Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 761 (1998) (hostile work environment claim). Title VII is designed to address ultimate employment decisions that include acts such as hiring, granting leave, discharging, promoting, and compensating. *See Burger v.*

*Central Apartment Management, Inc.*, 168 F.3d 875, 878 (5th Cir. 1999); *see also Jackson v. Honeywell International, Inc.*, 601 Fed. Appx. 280, 289 (5th Cir. 2015); *Stone*, 590 Fed. Appx. at 339 (citing *Alvarado v. Texas Rangers,* 492 F.3d 605, 612 (5th Cir. 2007)); *Pegram,* 361 F.3d at 282).   A contract employee is required to establish "some causal nexus" between her membership in a protected class and the decision not to offer her another contract.   *See Mosaka-Wright v. La Roche College*, 523 Fed. Appx. 886, 889 (3d Cir. 2013) (the plaintiff, a visiting assistant professor who was African, and who had very poor student evaluations and had a personality conflict with the Department Chair), failed to show a causal nexus between her race and Defendant's failure to renew her contract, ).

Picard alleges she was discriminated against by Bentley in Session 2 of 2017-2018, when Bentley, an African-American woman, forced her to teach a senior project to an aggressive, militant student whom Picard had already failed once.   ECF No. 98 at 3.   Picard contends she told Bentley she was afraid to teach the student, especially at night, but Bentley insisted she do so.   ECF No. 98 at 3.   Picard contends Bentley's action, forcing her to teach a threatening student, was a direct act of racial discrimination against her.   ECF No. 98 at 4.

Picard's allegation that she was forced to teach an unpleasant student at night does not allege an adverse ultimate employment decision.   Nor is it an apparent act based on race.

Picard further alleges (and Ashley Nelson confirms in her affidavit, ECF No. 98-2 at 1-2) that, prior to Session 3 of 2017-2018, Center Director Clark had told Picard she was going to teach Business Law, but Bentley refused to confirm the assignment, and instead gave the class to Mr. Ivory, an African American male with no education in or experience teaching law. ECF No. 98 at 4. Picard contends that, in the third session, two African American males were assigned to teach the classes she formerly taught–Mr. Ivory and Mr. Hebert. ECF No. 94 at 43. Picard points out that neither of them hold a law degree. Picard further contends she was not given any senior projects to teach in Session 3, although she had taught them "regularly" for "many years." ECF No. 98 at 4. Picard contends she was not given senior projects because she was an older, Caucasian female. ECF No. 98 at 4. Picard contends her senior projects were reassigned to Ms. Calbert, Ms. Manuel, and Ms. Graham, all African-American women. ECF No. 94 at 43.

Picard alleges that she "voiced her concerns to UIU upper-level employees in early December 2017" regarding her lack of classes and senior projects for the third session. ECF No. 98 at 4-5. On December 13, 2017, Bentley "facilitated" a political science class for Picard to teach, which Nelson had suggested in November 2017. ECF No. 98 at 5; No. 82-7 at 5.

Picard showed that she initially contacted the EEOC and made a written "complaint" on January 2, 2018. ECF No. 82-4 at 19-20; No. 82-4 at 71-78; No. 98-9 at 11-18. Picard was then offered an employment contract at UIU for the third

session on January 15, 2018, ten days after the third session had begun.  ECF No. 1-2 at 10-11; No. 98 at 5.  Because the class was offered late, after classes had begun, very few students enrolled.  ECF No. 98 at 5.  Because of the low enrollment, the class became a self-study course.  Picard considered it to be the first act of retaliation by Bentley.  ECF No. 98 at 5.

On February 27, 2018, Picard wrote a detailed letter to an unidentified person (apparently to the Higher Learning Commission[11]), again complaining about the conditions of, and her loss of, employment at UIU.  ECF No. 94 at 95-104; No. 82-7 at 7.  Picard contends that, on February 19, 2018, she told Defendant Adams that she had file an EEOC charge against UIU for discrimination.  ECF No. 98 at 6.

Bentley noted in her deposition that she was aware that on, March 13, 2018, Picard had mailed a letter to the Higher Learning Commission, complaining about UIU.  ECF No. 82-7 at 7.

Picard signed an EEOC discrimination charge on April 1, 2018.  ECF No. 1-2 at 7; No. 82-4 at 18.

Picard contends she was not offered any teaching positions for the fourth, fifth, and sixth sessions of 2017-18.  ECF No. 94 at 43, 58-59.

Thus, Picard has alleged an adverse employment decision in UIU's failure to renew her teaching contract.  *See Nkemakolam v .Northside Independent School*

---

[11] The Higher Learning Commission in an independent corporation, founded in 1895, that accredits degree-granting post-secondary education institutions in the United States.  *See https://www.hlcommission.org/About-HLC/about-hlc.html.*

*District,* 2015 WL 3651546, at *4 (W.D. Tex. 2015) ("District Courts throughout the

Fifth Circuit routinely find that a district's decision not to renew a teacher's contract

is an adverse employment action sufficient to establish the third element of the *prima*

*facie* case of employment discrimination.") (citing *King v. Lawrence County Board of*

*Education*, 2013 WL 319286, at *3 (S.D. Miss. 2013); *Jefferson v. Lancaster*

*Independent School District*, 2001 WL 1631522, at *3 (N.D. Tex. 2001)).

        c.    **There are genuine issues of material fact as to whether UIU's non-discriminatory reason for the adverse employment action against Picard is pretextual.**

Thus UIU "must articulate a nondiscriminatory reason with sufficient clarity

to afford [Picard] a realistic opportunity to show that the reason is pretextual." *See*

*Watkins,* 2021 WL 1826269, at *3 (citing *Burton v. Freescale Semiconductor, Inc.*,

798 F.3d 222, 231 (5th Cir. 2015).  UIU contends that adjunct professors are employed

on a contract basis, are not guaranteed employment each session, and are not

guaranteed the same classes to teach each session.  ECF No. 82-3 at 2-3.  UIU

contends that classes are often given to new teachers in order to widen their pool of

teachers.  ECF No. 82-7 at 4.

UIU contends Picard did not have a protected interest in employment at UIU.

UIU contends all adjunct professor's contracts state they may not be employed for

every session.  UIU further contends it did not offer Picard teaching contracts because

it was trying to increase its pool of teachers by offering contracts to new teachers.

Defendants show that at least 16 of the 41 adjunct professors in UIU's Alexandria

teaching pool in 2017/2018 were Caucasian, while 9 are listed as African American, 15 are "race and ethnicity unknown," and one is a Pacific Islander.  The teaching pool does not indicate who was actually employed during each session.  Nor has UIU alleged or shown that Picard's classes and senior projects were actually given to new teachers.

To show that UIU's reason is pretextual, Picard responds this was not a case in which she simply was not employed in the next sessions (fourth, fifth, and sixth). Picard contends she had been told by Ashley Nelson that she would teach a business law class and a constitutional law class shortly before the third session began, as well as handle several senior projects.  However, when Ashley Nelson quit working at UIU before the beginning of the third session, Cynthia Bentley instead assigned the classes to Mr. Ivory and Mr. Hebert, and assigned the senior projects other Ms. Calbert, Ms. Manuel and Ms. Graham.[12]   Hence, Picard alleges she was removed from the third session after she had been told she would be teaching.

---

[12] Ms. Calbert has a B.A. in Speech Communications/Public Relations, an M.S. in Social Work, and work experience as a counselor since 2006.  ECF No. 82-9 at 59-61. M. Manuel has a B.S. in psychology with a minor in chemistry, and an M.S. in Educational Psychology, and work experience as a counselor since 1998.  ECF No. 8209 at 63-64.  Ms. Graham has a B.S. in social science and a B.S. in psychology, and an M.S. in social work, and extensive work experience in social work (1993 to current) and about two years as a special education teacher.  ECF No. 82-9 at 65-68.

Picard further contends the five adjuncts who were given her classes and senior projects were all African-American, and that there was only one Caucasian scheduled to teach during Session 3.  ECF No. 98 at 4.

There are genuine issues of material fact as to whether UIU's reason for the adverse employment decisions against Picard is pretextual and whether UIU discriminated against Picard due to her race.  Because there are genuine issues of material fact, UIU's Motion for Summary Judgment (ECF No. 82) is DENIED on the issue of racial discrimination.

5.   <u>There are genuine issues of material fact on the issue of retaliation under Title VII that preclude a summary judgment.</u>

Picard filed an EEOC discrimination charge on April 1, 2018.  ECF No. 1-2 at 7; No. 82-4; No. 98-1; No. 98-9 at 1.  The EEOC did not consider Picard's complaint, instead issuing a "Notice of Right to Sue" on September 27, 2018 because it determined that it was "unlikely that the EEOC [would] be able to complete its administrative processing within 180 days from the filing" of the complaint.  ECF No. 1-2 at 6.

Title VII prohibits retaliation against employees who engage in protected conduct," such as filing a charge of harassment or discrimination.  *See Stone v. Louisiana Department of Revenue*, 590 Fed. Appx. 332, 341 (5th Cir. 2014), cert. den., 576 U.S. 1005 (2015) (citing *Perez v. Region 20 Educational Service Center,* 307 F.3d 318, 325 (5th Cir. 2002)).  To state a claim for retaliation in violation of Title VII, the plaintiff must allege that her employer took an adverse employment action against

23

her in retaliation for engaging in protected conduct. The standard for establishing an adverse employment action in the retaliation context differs from the standard in the discrimination context. *See Stone*, 590 Fed. Appx. at 341 (citing *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 66–68 (2006) (noting that the anti-retaliation provisions of Title VII are broader than the anti-discrimination provisions)). For purposes of a retaliation claim, an adverse employment action is one that "a reasonable employee would have found . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *See id.*, 548 U.S. at 68. "[T]he significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *See id.*, 548 U.S. at 69.

The *prima facie* case for retaliation under Title VII has three elements. The plaintiff must show that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *See Ladner v. Walmart, Inc.*, 834 Fed. Appx. 893, 896 (5th Cir. 2020) (citing *Brown*, 969 F.3d at 577).

### d.   Protected activity and adverse employment action.

Picard contends she was engaged in a protected activity when she complained to the UIU upper management, filed an EEOC charge, and complained to the Higher Learning Commission.

24

Picard alleges she was discriminated against by Bentley in Session 2 of 2017-2018, when Bentley, an African-American woman, forced her to teach a senior project to an aggressive, militant student whom Picard had already failed once.  ECF No. 98 at 3.  Picard contends she told Bentley she was afraid to teach the student, especially at night, but Bentley insisted she do so.  ECF No. 98 at 3.  Picard has not alleged an adverse employment action as to an ultimate employment decision.  Instead, she alleges that she was "forced" to teach an unpleasant student, and was required to do so at night.

Picard further alleges that, prior to Session 3 of 2017-2018, Ashley Nelson had "promised" Picard she was going to teach Business Law, but Bentley refused to confirm the assignment, and instead gave the class to Mr. Ivory, an African American male.  ECF No. 98 at 4.  Picard contends that, in the third session, two African American males were assigned to teach the classes she formerly taught–Mr. Ivory and Mr. Hebert.  ECF No. 94 at 43.  Picard points out that neither of them hold a law degree.

Picard also contends she was not given any senior projects to teach in Session 3, although she had taught them "regularly" for "many years."  ECF No. 98 at 4.  Picard contends her senior projects were given to Ms. Calbert, Ms. Manuel, and Ms. Graham, all African-American women.  ECF No. 94 at 43.  Picard contends she had "taught" senior projects "regularly" for "many years."  ECF No. 98 at 4.

25

Picard contends she "voiced her concerns to UIU upper-level employees in early December 2017," regarding her lack of classes and senior projects for the third session.  ECF No. 98 at 4-5.  On December 13, 2017, Bentley "facilitated" a class for Picard to teach, which Nelson had suggested in November 2017.  ECF No. 98 at 5.  Picard was offered an employment contract for the third session on January 15, 2018, ten days after the third session had begun.  ECF No. 1-2 at 10-11; No. 98 at 5.  This class became the self-study course.  Also, all of the senior projects were also taken away from Picard in the third session.  ECF No. 94 at 43.

On January 12, 2018, Picard filed an EEOC charge.  ECF No. 1-2 at 7.  On February 27, 2018, Picard wrote a long and detailed letter to an unidentified person or organization, again complaining about the conditions of, and loss of, employment at UIU.  ECF No. 94 at 95-104.

Picard contends she was not offered any teaching positions for the fourth, fifth, and sixth sessions of 2017-18.  ECF No. 94 at 43, 58-59.

Thus, Picard has alleged that she engaged in protected activities under the First Amendment and, as a result, suffered adverse employment actions.

### e.   Causal connection.

To complete her burden of proof, Picard must also show a causal connection exists between the protected activity and the adverse employment action.

Title VII retaliation claims must be proved according to traditional principles of but-for causation.  *See University of Texas Southwest Medical Center v. Nassar,*

570 U.S. 338, 360 (2013); *see also Hernandez v. Metropolitan Transit Authority of Harris County*, 673 Fed. Appx. 414, 419–20 (5th Cir. 2016). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer. *See Nassar,* 570 U.S. at 360; *Hernandez*, 673 Fed. Appx. at 419–20. The standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint. *See Burlington Northern & Santa Fe Railway Co*, 548 U.S. at 69-70. The focus is on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position. *See Burlington Northern & Santa Fe Railway Co.*, 548 U.S. at 69-70.

A plaintiff must show "a 'conflict in substantial evidence'" on the question of whether the employer would not have taken the adverse employment action but for the protected activity. *See Musser v. Paul Quinn College*, 944 F.3d 557, 561 (5th Cir. 2019) (quoting *Hernandez v. Yellow Transportation, Inc.*, 670 F.3d 644, 658 (5th Cir. 2012), *cert. den. sub nom.*, 568 U.S. 817 (2012)). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* at 561–62.

"At the prima facie case [stage], a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." *Brown*, 969 F.3d at 577 (quoting *Garcia v. Professional Contract Services, Incorporated*, 938 F.3d 236, 243 (5th Cir. 2019)). However, "[t]he protected

act and the adverse employment action must be very close in time to establish causation by timing alone." *Brown*, 969 F.3d at 577 (quoting *Porter v. Houma Terrebonne Housing Authority Board. of Commissioners*, 810 F.3d 940, 948 (5th Cir. 2015)).   In *Brown*, the United States Fifth Circuit Court of Appeals noted that a period of two-and-a-half months, *Garcia*, 938 F.3d at 243, a period of two months, *Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 995 (5th Cir. 2005), and a period of six-and-a-half weeks, *Porter*, 810 F.3d at 949, are close enough to establish a causal connection.   *See Brown*, 969 F.3d at 578.

The standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint.   The focus is on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position.   *See Burlington Northern & Santa Fe Railway Co*, 548 U.S. at 69-70.

Picard alleges that, in the second session of 2017-2018, Bentley forced her to teach a senior project to an aggressive, militant student whom Picard had already failed once.   ECF No. 98 at 3.   Picard contends she told Bentley she was afraid to teach the student, especially at night, but Bentley insisted she do so.   ECF No. 98 at 3.   Picard contends she was "promised" classes in the third session by Ashley Nelson, but when Nelson left her job, Bentley did not offer Picard the "promised" employment contracts and did not give Picard any senior projects.   ECF No. 94 at 43.[13]

---

[13] Although UIU contends Picard was removed from the senior projects because it was discontinuing senior projects, Picard alleges the six senior projects she had been assigned to, or was to be assigned to, were assigned to other faculty members.

Picard contends she "voiced her concerns to UIU upper-level employees" about possible discrimination in early December 2017. ECF No. 98 at 4-5. On December 13, 2017, Bentley "facilitated" a class for Picard to teach–a class that Nelson had suggested for Picard in November 2017. ECF No. 98 at 5. Bentley states in her affidavit that she was told (by either Kathy Franken or Tiffany Adams) that Picard had complained Bentley had discriminated against her by not selecting her to teach a course in Session 3. ECF No. 82-7 at 5. Bentley further states in her affidavit that, in order to show she had not discriminated or retaliated against Picard, she offered her a political science course in Session 3. ECF No. 82-7 at 5.

However, Picard was not offered an employment contract for the third session until January 15, 2018, ten days after the third session had begun. ECF No. 1-2 at 10-11; No. 98 at 5. Because the class was offered so late, enrollment was low and it became a self-study course. ECF No. 98 at 5. Also, all of the senior projects were taken away from Picard in the third session. ECF No. 94 at 43.

On January 12, 2018, Picard filed an EEOC charge. ECF No. 1-2 at 7. On February 27, 2018, Picard wrote a detailed letter (according to Bentley's affidavit, it appears the letter was to the Higher Learning Commission) complaining about the conditions of, and loss of, employment at UIU. ECF No. 94 at 95-104; No. 82-7 at 7.

29

Picard was not offered any teaching positions for the fourth, fifth, and sixth sessions of 2017-18.[14]  ECF No. 94 at 43, 58-59.

Bentley's self-proclaimed attempt to show she was not discriminating or retaliating against Picard, by offering her a class, then putting that class on the schedule too late for enrollment, appears to have been an empty gesture.  ECF No. 82-7 at 5.  Although Bentley contends in her affidavit that courses are sometimes added soon before they are scheduled to start (ECF No. 82-7 at 3), she does not address the addition of a course after classes start.  Moreover, Bentley's gesture, offering Picard a class, belies Bentley's affidavit (EVF No. 8207 at 3-4) and UIU's repeated assertion in its brief that Bentley did not select the teaching professors each session.[15]  Taking Picard's senior projects and giving them to other teachers in 2018, pretending to give Picard a class to teach in 2018 but failing to place it on the schedule before classes began, and failing to offer Picard a teaching contract ever again, after her regular employment for ten to eleven years, is all indicative of retaliation against her for her complaints about Bentley and about UIU in 2018.  It appears that, but for

---

[14] Session 4 started on March 9, 2018 and Session 5 started May 14, 2018.  ECF No. 82-3 at 9.

[15] In her affidavit, Bentley states that she became South Central Regional Director of UIU in May 2017.  Bentley states that the Center Director of each UIU campus is responsible for recommending adjunct instructors, then the Deans review the recommendations to ensure they are academically qualified.  ECF No. 82-7 at 6.  The Center Directors and Regional Managers collaborate on who will teach courses after they are approved.  ECF No. 82-7 at 6.  However, before Session 3 of 2017, the Center Director in Alexandria resigned.  ECF No. 82-7 at 6.  Ashley Nelson, the office manager in Alexandria, states in her affidavit that, after the Center Director resigned, Bentley took over the duties of Center Director in Alexandria at that time, including employment of adjunct instructors.  ECF No. 98-2 at 1-2.

Picard's complaints of discriminatory hiring practices at UIU, Picard would have been offered further employment contracts at UIU.

Therefore, it appears that Picard taught in most sessions since 2008. Picard complained in early December 2017, January 12, 2018, and February 27, 2018. Picard's session 3 class was not placed on the schedule until January 15, 2018–10 days after classes began and too late to enroll sufficient students for her to teach the class. Picard was not offered any classes to teach or senior projects after that. According to Ashley Nelson, Picard was not given any reason for no longer being offered classes. ECF No. 98-2 at 2.

### f.   Pretext

In *Brown,* the Fifth Circuit found that the temporal proximity between Brown's protected activity and her termination was relevant to, but not alone sufficient to demonstrate, pretext. *See Brown*, 969 F.3d at 579; *see also Berry v. Ouachita Parish Sheriff's Office*, 834 Fed. Appx. 843, 847 (5th Cir. 2020). The court considered whether other evidence in combination with the temporal proximity was sufficient for a reasonable juror to find but-for causation. *See Brown*, 969 F.3d at 579.

Picard engaged in protected conduct in complaining about UIU. Picard contends Defendants retaliated against her by offering her a spurious employment contract in Session 3, and by not offering her any employment contracts in Sessions 4, 5 and 6. ECF No. 98 at 6.

UIU contends Bentley offered Picard a contract to teach a class on January 15, 2018 (ten days after classes had started),[16] but that not enough students signed up for the class.  Since the contract to teach was offered, and the class was added to the schedule, 10 days after classes had already begun, the offer to teach was spurious.

Bentley stated in her deposition that she offered the contract because she did not want to "retaliate" against Picard for having complained to the UIU upper management.  However, Bentley admitted in her deposition that Picard was not offered any classes in the fourth, fifth, and sixth sessions of 2017/2018.  ECF No. .

The timeline supports a plausible inference of retaliation.  *See George v. Youngstown State Univ.,* 966 F.3d 446, 462 (6th Cir. 2020).  Picard's promised teaching contracts were not offered and she was removed from senior projects after she began complaining to UIU upper management.  Then she was proffered a teaching position in the third session to avoid the appearance of retaliation, but that position never materialized.  Picard was not offered any teaching contracts in the fourth, fifth, and sixth sessions after she filed her EEOC charge and complained to the Higher Learning Commission.

Therefore, temporal proximity indicates that "but for" Picard's complaints of discrimination in December 2017, January 2018 and February 2018, Defendant would not have retaliated by taking away the work she had been told by Nelson that

---

[16] Picard was offered an employment contract on January 15, 2018 (ECF No. 1-2 at 10-11), to teach American Constitutional Law I as an adjunct faculty member.

she would have in the third session (in January 2018), and by not employing her again in the following sessions (March and May 2018).

The other evidence of pretext is Bentley's argument that, as the South Central Regional Director, she did not recommend or select adjunct instructors because that was the job of the Center Directors.  ECF No. 82-7 at 3-4.  However, Nelson contends in her affidavit that, after the previous Center Director left and before a new one was hired, Bentley took over the duties of the Center Director.  ECF No. 98-2 at 1.  Nelson contends Bentley did not offer Picard any classes and instead gave Picard's usual classes to less qualified teachers.  ECF No. 98-2 at 2.

Because there are genuine issues of material fact as to whether Picard was retaliated against for complaining to upper UIU management, filing an EEOC charge, and complaining to the Higher Learning Commission, UIU's Motion for Summary Judgment is DENIED on the issue of retaliation.

### 6.   There are no genuine issues of material fact on the issue of constructive discharge.

Picard states that she is claiming constructive discharge.  ECF No. 94 at 24. Picard contends she was "constructively let go" because she was not forced to quit and was not fired, but was "terminated constructively."  ECF No. 94 at 26.  Before Session 4, Ms. Miles and Ms. Bentley told Picard there were no positions available for her. ECF No. 94 at 33.

To prove constructive discharge, a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to

33

resign. *See Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 397 (5th Cir. 2004), op. clarified, 2004 WL 2107672 (5th Cir. 2004). A constructive discharge claim is based on a plaintiff's actual resignation, without which no discharge—constructive or otherwise—has occurred. *See Raj*, 714 F.3d at 330–31 (citing *See Brown v. Kinney Shoe Corp.,* 237 F.3d 556, 566 (5th Cir.2001), cert. den., 534 U.S. 817 (2001); *Barrow v. New Orleans Steamship Association,* 10 F.3d 292, 297 (5th Cir. 1994); *Jurgens v. E.E.O.C.,* 903 F.2d 386, 390 (5th Cir. 1990)).

Picard did not resign. And because her employment contracts were each of limited duration, Picard was not actually discharged. She simply was not offered any further employment contracts. Therefore, Picard was not constructively discharged.

Because there are no genuine issues of material fact as to whether a constructive discharge took place, UIU's Motion for Summary Judgment (ECF No. 82) is GRANTED as to Picard's constructive discharge claim.

### 7.   There are no genuine issues of material fact that preclude a summary judgment as to Picard's whistleblower claim.

Picard alleged in the complaint that Defendants violated UIU's whistleblower procedures when they failed to notify her "directly" of their findings after she filed complaints. ECF No. 1-1 at 7. Although Plaintiffs did not cite the Louisiana Whistleblower Statute, La. R.S. 23:967, in their petition, they argued in their briefs in opposition to UIU's Motion to Dismiss that it is applicable to their case (ECF Nos. 36, 38).

34

The Louisiana Whistleblower Statute provides protection to employees against reprisal from employers for reporting or refusing to participate in illegal work practices.  *See Hale v. Touro Infirmary,* 2004–0003 (La. App. 4th Cir.11/3/04), 886 So.2d 1210, 1214, writ den*.,* 2005–0103 (La.3/24/05), 896 So.2d 1036; *Accardo v. Louisiana Health Servs. & Indemnity Co.*, 2005-2377 (La. App. 1 Cir. 6/21/06), 943 So.2d 381, 383.  The statute states:

> An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
>> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
>> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

La. R.S. § 23:967(A); *see Wilson v. Tregre*, 787 F.3d 322, 326 (5th Cir. 2015).

A violation of La. R.S. 23:967 occurs if (1) the employer violated Louisiana law through a prohibited workplace practice; (2) the plaintiff advised the employer of the violation; (3) the plaintiff threatened to disclose or disclosed the prohibited practice; and (4) the plaintiff experienced a reprisal as a result of the threat to disclose or because of the disclosure of the prohibited practice.  *See Derbonne v. State Police Commission*, 2019-145 (La. App. 1 Cir. 10/14/20), 314 So.3d 861, 870, *writ den., 2020-* 01323 (La. 2/17/21), 310 So.3d 1152 (citing D*obyns v. University of Louisiana System,* 2018-0811 (La. App. 1 Cir. 4/12/19), 275 So.3d 911, 926, *writ denied,* 2019-00950 (La. 9/24/19), 278 So.3d 977).

In order to bring an action under La. R.S. 23:967, the employee must establish the employer engaged in workplace conduct constituting an actual violation of state law. See *Accardo,* 943 So.2d at 386; *Hale*, 886 So.2d at 1214; *Encalarde v. New Orleans Center for Creative Arts/Riverfront*, 2014-2430 (La. 2/13/15), 158 So.3d 826, 827. A claim under La. R.S. 23:967 requires a violation of state law, not federal law. *See Yazdi v. Lafayette Parish School Board,* 2020 WL 5876703, at *5 (W.D. La. 2020) (citing *Genella v. Renaissance Media,* 115 Fed. Appx. 650, 652 (5th Cir. 2004)).

Picard alleges only violations of federal law, except for her whistleblower claim, and has not cited or otherwise indicate any violations of Louisiana state law by UIU. Therefore, there are no genuine issues of material fact that preclude a summary judgment on this issue. UIU's Motion for Summary Judgment is GRANTED as to Picard's claim under the Louisiana Whistleblower Statute.

### 8.   <u>UIU's Motion for Summary Judgment as to Picard's claim for punitive damages is granted.</u>

UIU contends Picard's claim for punitive damages under Title VII should be dismissed, citing *Kolstad v. American Dental Association*, 527 U.S. 526 (U.S. 1999).

In *Kolstad*, 527 U.S. at 535-36, the Supreme Court explained that a court may assess punitive damages in an action under § 1983 or Title VII when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. *See Kolstad*, 527 U.S. at 535-36 (citing *Smith* v. *Wade,* 461 U.S. 30, 56 (1983)). Although it is unnecessary to show actual malice to qualify for a punitive award, *id.,* at 45–48, 103

S. Ct. 1625, at a minimum a plaintiff must prove subjective recklessness. *See Kolstad*, 527 U.S. at 536 (citing *Smith*, 461 at 37.)  The Supreme Court in *Kolstad* held that an employer must at least discriminate in the fact of a perceived risk that its actions will violate federal law.  *See Kolstad*, 527 U.S. at 536.  Intentional discrimination will not give rise to punitive damages where the employer is unaware of the federal prohibition, or believes that its discrimination is lawful. *See Kolstad*, 527 U.S. at 536-37.

Also, the plaintiff must impute liability for punitive damages to the employer. *See Kolstad*, 527 U.S. at 539-40.  Even if particular agents acted with malice or reckless indifference, an employer may avoid vicarious punitive damages liability if it can show that it made good-faith efforts to comply with Title VII.  *See E.E.O.C. v. Boh Brothers Construction Co., L.L.C.*, 731 F.3d 444, 467 (5th Cir. 2013) (citing *Kolstad,* 527 U.S. at 545–46) (recognizing that implementing programs or policies to prevent discrimination in the workplace constitutes a good faith effort to comply with Title VII)).

UIU relies on the fact that it has a written discrimination and retaliation policies to show that it made a good faith effort to prevent discrimination and retaliation at UIU.  UIU submitted a copy of its "Discrimination and Equal Employment Opportunity (EEO)" policy, in effect from 2017 to mid-2018, which includes complaint procedures and a prohibition against retaliation.  ECF No. 82-9 at 5-10; ECF No. 82-9 at 2 (affidavit of Abigail Bynum, Compliance Coordinator).

UIU also submitted: (1) a copy of its "University Policy: Human Resources Policies: No. 305–Discrimination, Harassment, and Retaliation Policy" (August 31, 2020 revision) (ECF No. 82-9 at 11-18); (2) excerpts from its Staff and Administration Handbook as to equal employment opportunity, retaliation, and harassment policies and complaint procedures, in effect since before 2017 (ECF No. 82-9 at 19-22; 82-9 at 2-affidavit of Abigail Bynum); and (3) the training histories for various employees (including Cynthia Bentley, Tiffany Adams, Kathy Franken, Karen Jackson, and Lydia Miles), showing that UIU required its supervisory employees to undergo yearly video-training as to its policies, including discrimination, harassment, and retaliation, from 2017 through 2020 (ECF No. 82-9 at 23-58).  According to the affidavit of Abigail Bynum, the current Compliance Coordinator at UIU, training was also given at UIU before 2017, but those records are no longer available.  ECF No. 82-9 at 1-2.

UIU was clearly aware of the federal laws prohibiting discrimination, harassment and retaliation, adopted policies to incorporate those laws, provided procedures to address employee complaints for policy violations, and took active steps to ensure its supervisory and other employees were knowledgeable of those laws and policies.

Because UIU made good faith efforts to comply with Title VII, it cannot be held liable for punitive damages for any violations of those policies by its employees with respect to Picard.

Accordingly, Picard's claim for punitive damages is DENIED and UIU's Motion for Summary Judgment (ECF No. 82) is GRANTED IN PART as to Picard's claim for punitive damages.

## III.   Conclusion

Based on the foregoing,

The Clerk of Court is DIRECTED TO TERMINATE Defendants Bentley, Adams, Franken, and Duffy ON THE DOCKET.

IT IS ORDERED that UIU's Motion to Strike (ECF No. 102) is DENIED.

IT IS ORDERED that UIU's Motion for Summary Judgment (ECF No. 82) is GRANTED IN PART AND DENIED IN PART as follows:

1. UIU's Motion for Summary Judgment (ECF No. 82) is GRANTED as to Picard's gender discrimination claim due to lack of exhaustion. Picard's gender discrimination claim is DENIED AND DISMISSED WITH PREJUDICE.

2. UIU's Motion for Summary Judgment is GRANTED as to Picard's ADEA claim.  Picard's ADEA claim is DENIED AND DISMISSED WITH PREJUDICE.

3. UIU's Motion for Summary Judgment (ECF No. 82) is DENIED as to Picard's claim of racial discrimination.

4. UIU's Motion for Summary Judgment (ECF No. 82) is DENIED as to Picard's Title VII retaliation claim.

5. UIU's Motion for Summary Judgment (ECF No. 82) is GRANTED as to Picard's claim of constructive discharge.  Picard's constructive discharge claim is DENIED AND DISMISSED WITH PREJUDICE.

6. UIU's Motion for Summary Judgment (ECF No. 82) is GRANTED as to Picard's claim under the Louisiana Whistleblower Statute. Picard's Louisiana Whistleblower Statute claim is DENIED AND DISMISSED WITH PREJUDICE.

7.  UIU's Motion for Summary Judgment (ECF No. 82) is GRANTED as to Picard's claim for punitive damages and that claim is DENIED AND DISMISSED WITH PREJUDICE.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this _____9th_____ day of November 2021.

Joseph H.L. Perez-Montes
United States Magistrate Judge

40